## FRANK PALLMAN v. M. J. SMITH.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF McKEAN COUNTY.

Argued May 6, 1890—Decided May 19, 1890.

1. In an action to recover upon a contract to cut and deliver all the logs upon a tract of land, the seller cannot recover unless it is found from the evidence that he has substantially complied with his contract, by cutting and delivering all the logs upon the tract of the kind specified.

2. But the leaving back of a few of the logs, which were so covered with brush and snow that they could not be found and got out by reasonable care and diligence, would not be such a failure of substantial performance as would defeat the plaintiff's right to recover for the timber delivered.

3. In ascertaining the quantity of timber cut and delivered, it was not

Statement of Facts.

error to admit in evidence an account of the measurements entered by the plaintiff at the time they were made on boards prepared for the purpose. in connection with the plaintiff's testimony showing how the measures were taken and how they were so entered.

4. Nor was it error to refuse offers by the defendant to prove the amount of bark that was peeled from the timber cut and sold, or the amount of unpeeled logs on the tract, as evidence tending to show the amount of the timber cut and delivered to the defendant under the contract.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and Mc-COLLUM, JJ.

No. 115 January Term 1890, Sup. Ct.; court below, No. 249 December Term 1885, C. P.

On December 3, 1885, Frank Pallman brought covenant against M. J. Smith. Issue.

At the trial on February 12, 1889, it was made to appear that on September 2, 1884, Pallman and Smith entered into a contract under seal by which Pallman sold to Smith all the " hemlock logs, both peeled and unpeeled," on Pallman's land, to be delivered in the river from the said land before March 1, 1885, for " $4.12½ per thousand feet, per Dusenbury rule, for all logs delivered prior to the river freezing over, and the sum and price of $4 per thousand feet for all logs delivered after the river freezes over; " and it was provided that " all logs in the woods on skidways, to be measured by party of the second part, on the skidways, and all logs not on skidways to be measured on the bank of the river on first party's land."

The plaintiff introduced evidence of performance on his part, and, to establish the quantities delivered under the contract, testified that when the logs were measured the defendant and his man Havens made the measurements, and they were taken down for the defendant by one of his sons in a little book, and for the plaintiff by himself on a board or boards prepared and ruled for the purpose; that comparisons were made after each day's measurement, and the quantities upon the plaintiff's boards agreed with those on defendant's books. The plaintiff then offered the boards in evidence in connection with his testimony.

Objected to, as incompetent and irrelevant; the contract between the plaintiff and the defendant specifically designat-

ing the party who is to keep the scale and the account, that person to be the defendant in this case, who has done it.

By the court: The court, being of the opinion that the boards would not be competent as original evidence, but that, taken in connection with the testimony of the witness, they are some evidence as to what he did, and as showing his knowledge of how much was measured, for that reason the objection is overruled and the evidence admitted.[1]

The defendant introduced testimony to support the defence that the plaintiff had not cut and delivered all the logs upon the tract in compliance with his covenant.

S. M. Turner called by defendant, testified that "this fall" he and Mr. Bishop, an employee of defendant, went over the land "and found ten marked logs and then we counted 77 unmarked logs." Q. You may state what amount of unpeeled logs were cut upon the place?

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[2]

By Hiram Dean, called by defendant, it was offered to prove "the amount of bark that was peeled from the timber cut and sold to Mr. Smith, for the purpose of showing the amount of timber delivered."

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[3]

The court, OLMSTED, P. J., charged the jury, in part as follows:

We have been asked by the defendant's counsel to answer a point in writing which we will answer now:

1. The defendant respectfully requests the court to charge that a failure on the part of the plaintiff to fully comply with the terms of his contract is a bar to recovery in this case; and, if the jury believe from the evidence that he so failed, then, without regard to the matter of account between the parties, the verdict of the jury should be for the defendant.

[In answer to this point, the jury are instructed that the plaintiff cannot recover in this case, unless the jury find from the evidence that he has substantially complied with his contract. A mere technical failure to comply, by the leaving back of a few logs that were so covered with brush or snow that

Charge of Court below.

they could not be found and got out by using reasonable care and diligence, would not be such a substantial failure as would defeat the plaintiff's right to recover upon that ground. It is an action of covenant, and the plaintiff cannot compel the defendant to keep his covenants, unless the plaintiff himself shows that he has kept the covenants on his part. If the plaintiff substantially failed to comply with his contract, then, in the language of this point and without regard to the accounts between the parties, the plaintiff could not recover, because he cannot call the defendant to account until he has himself complied. But a mere technical failure would not defeat his right to recover. If a contract was let for the construction of a building, and in some unsubstantial and inconsequential particular the contract was not carried out, if it was substantially in accordance with the contract, the plaintiff would be entitled to recover for the value of the labor on the building. And so in this log contract; if the plaintiff substantially fulfilled his contract by cutting the logs and delivering them, substantially as he had agreed to, then he can recover although there may be a few logs that were not delivered. If they were logs that were covered by the fallings of the trees so that they could not be seen at the time of hauling the logs, or logs that were covered deep in the snow so that they could not be well found, a small amount I mean, that would not be a substantial failure to comply. But, if there was a large amount of logs left on the land, and the job was so carelessly and recklessly done that you could say it was only partially done, the plaintiff could not recover at all.] [4] [This question is one of fact for the jury, and not of law for the court, and that depends somewhat on the custom of lumbermen. Was this lot cleared from the timber as closely as it is the custom of prudent and economical lumbermen to clear it? If it was, it was a substantial compliance; and, if not, it was a failure to comply, and as such would defeat the plaintiff's right to recover; and that is a question for you to determine from the evidence.] [5]

The plaintiff testifies himself that he cleared the lot very clean. And several witnesses testify on that point. The defendant's witnesses show that there was a considerable amount of timber left back; that there were 77 logs, or timber that

Charge of Court below.

would have made 77 logs, that were not got in, and that there
were eight or ten or twelve that were measured and marked
with Smith's mark that were not got in; while the evidence
for the plaintiff makes the amount that was left back on the
lot a much less amount than that.   The evidence of two wit-
nesses, whose names I do not remember, and it is not neces-
sary that I should go over this evidence in exact detail, is that
there were some eight or ten very small logs that were left
back, that were measured to Smith and confessedly included
in his general item of the quantity which the plaintiff alleges
that he has delivered, and the evidence of the witnesses is that
it amounted to 208 feet or thereabouts; logs that were cut and
marked with Smith's mark and measured and went into this
account; and they in any event should be measured out be-
cause Smith did not get them and should not pay for them.

Then there is considerable evidence on the part of the plaint-
iff as to the quantity of timber left back on the lot that was
not marked to Smith, making it a far less amount than the
testimony of the defendant would indicate.   You will have to
find on this question from the evidence of the witnesses, which
is somewhat contradictory.   [The quantity of lumber that was
left back on the lot and not measured to Smith and therefore
was not charged to him in this account, would be of no conse-
quence in this case, because confessedly Smith has not been
charged with that; it would be of no consequence except as
bearing on the question of whether there was a substantial
compliance with the contract, and in that view you will ex-
amine that evidence.   Whatever is measured for Mr. Smith
and not drawn in should be deducted from the grand aggre-
gate which Smith alleges he got in, because it would be charg-
ed in.] [6]   And that is all that it is necessary for me to charge
upon that point.

Now we come right up against the question of how much
lumber did the plaintiff deliver to the defendant?   [If you
should find, as I have said to you already, that there was such
an utter failure to comply on the part of the plaintiff here, or
such a failure to comply as that he did not substantially com-
ply with his contract, you would not go any further, but your
verdict would be for the defendant.   But if you should find
that although there were some logs left back, yet that notwith-

Opinion of the Court.

standing that fact, it was a substantial compliance with the terms of the covenant that Mr. Pallman had entered into, then you would proceed to the question of how much did the plaintiff really deliver to the defendant,] [7] and upon that question the evidence is a good deal conflicting. . . . .

The jury returned a verdict for the plaintiff for $436.77. A rule for a new trial having been discharged, judgment was entered, when the defendant took this appeal assigning for error:

1. The admission of the plaintiff's offer.[1]
2, 3. The refusal of the defendant's offers.[2] [3]
4–7. The portions of the charge embraced in [ ] [4 to 7]

*Mr. R. P. Cotter* (with him *Mr. E. L. Keenan*), for the appellant.

As to performance, counsel cited: Alcott v. Hugus, 105 Pa. 350; 4 Am. & Eng. Encyc. of Law, 917; Harris v. Ligget, 1 W. & S. 301; Martin v. Schoenberger, 8 W. & S. 367; Hartley v. Decker, 89 Pa. 470.

*Mr. E. R. Mayo*, for the appellee.

As to substantial performance, counsel cited: Snodgrass v. Gavit, 28 Pa. 221; Chambers v. Jaynes, 4 Pa. 39; Preston v. Finney, 2 W. & S. 53; Fessler v. Love, 43 Pa. 313. Upon the second and third assignments: Clymer v. Thompson, 1 W. N. 261; Clement v. Wright, 40 Pa. 250.

PER CURIAM:

Our examination of this record satisfies us that the judgment should be affirmed. The question of plaintiff's compliance with his contract was submitted to the jury under proper instructions. They were distinctly told that unless there was a substantial compliance he could not recover. The amount of logs delivered and the balance due plaintiff under the contract were questions for the jury.

No error is perceived in the admission of the testimony of the plaintiff in regard to the measure of the logs kept on the boards. The contract between the parties does not specify who shall keep the measure; it only provides that they shall be scaled " per Dusenbury rule."

Statement of Facts.

Nor was there error in rejecting the evidence referred to in the second and third assignments. It would not have thrown any light upon the investigation to have proved the amount of unpeeled logs cut upon the place, or the amount of. bark that was peeled from the timber cut. On the contrary, the probability is that such testimony would have confused the jury, if it did not mislead them.

The remainder of the assignments refer to the instructions of the court, which are free from error.

Judgment affirmed.