# In re Voluntary Assignment of Abner Hoge. Appeal of Bazel Gordon.

*Partnership—Joint debtors—Subrogation.*

The reason why subrogation is not allowed to one partner against his copartner, or to one merely a joint debtor against his codebtor is because, as between them, there is no obligation to pay the debt resting upon one, superior to that which rests upon the others.

*Partnership — Individual creditors—Subrogation—Marshaling assets— Partner's equity.*

Six persons borrowed a sum of money on their joint and several judgment notes, and contributed the money thus borrowed to a partnership which they formed amongst themselves and one other. The partnership subsequently failed, and all of the partners except one made individual assignments for the benefit of creditors. The judgment creditors claimed and received payment of their judgments from the assigned estate of one of the partners on the theory that the judgments were partnership debts. The individual creditors of the partner from whose estate the judgment had been paid claimed to be subrogated to the rights of the judgment creditors against the assigned estate of a second partner. *Held*, (1) that the judgments were not partnership debts; (2) that the creditors of the partner from whose estate the judgments had been paid were not entitled to subrogation against the second partner's estate, except as to one sixth of the amount paid out of their assignor's estate

Argued Oct. 17, 1898. Appeal, No. 49, Oct. T., 1898, by Bazel Gordon, from order of C. P. Greene Co., Jan. T., 1890, No. 7, sustaining exceptions to auditor's report. Before GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of A. A. Purman, Esq., auditor.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to auditor's report by MESTREZAT, P. J., of the 14th judicial district, specially presiding.

*J. W. Ray*, with him *R. C. McConnell, J. H. Wise* and *W. E. Minor*, for appellants.—In the distribution of an assigned estate those only are entitled to share who have a definite demand or cause of action capable of adjustment or liquidation at the time

of the assignment: Miller's App., 35 Pa. 481; Potter v. Gilbert, 177 Pa. 159; Lea's App., 164 Pa. 407; Dean & Son's App., 98 Pa. 101; Jordan's App., 107 Pa. 84.

Upon an assignment for the benefit of creditors, the property of the assignor is in trust for the benefit of all his creditors, without regard to the nature of the securities they hold. The creditors are the equitable owners: Graeff's App., 79 Pa. 146.

The principle governing all cases of the substitution or subrogation is an equitable one merely; and it should not be exercised or carried out when it will in any way interfere with the legal or equitable rights of others: Mosier's App., 56 Pa. 76; Keely v. Cassidy, 93 Pa. 318; Wagner v. Elliott, 95 Pa. 487; Fink v. Mahaffy, 8 Watts, 384; Singizer's App., 28 Pa. 524; Sterling v. Brightbill, 5 Watts, 229; Baily v. Brownfield, 20 Pa. 41; Fessler v. Hickernell, 82 Pa. 152; Sheldon on Subrogation (2d ed.), 260.

When there are partnership property and partnership creditors and separate property and separate creditors, each class of creditors must look to its respective estate, without jostling each other for payment in the first instance. Each has its priority on its respective estate; after it is satisfied, the other may come upon the residue, according to its several legal and equitable rights: Houseal's App., 45 Pa. 484; Heckman v. Messinger, 49 Pa. 465; McCormick's App., 55 Pa. 252; Gallagher's App., 114 Pa. 353; Walker v. Eyth, 25 Pa. 216; Babb v. Reed, 5 Rawle, 151.

The parties claiming subrogation in this case are claiming adversely to, and not under, the assignment of Abner Hoge, and are not entitled, therefore, to any part of the fund for distribution. Those who claim adversely cannot be heard: Schroeder's App., 14 W. N. C. 537; Okie's App., 9 W. & S. 156; Wylie's App., 92 Pa. 196.

*A. F. Silveus*, with him *S. M. Smith, R. F. Downey, R. H. Phelan* and *J. B. Donley*, for appellee.—If one person, for the purpose of entering into partnership with another, borrows money, giving his individual note therefor, and it is used by the copartner in buying goods for the firm, the debt does not thereby become that of the firm unless expressly assumed: Donnally v. Ryan, 41 Pa. 306; Brooke v. Evans, 5 Watts, 196;

Collyer on Partnership, sec. 516; Graeff v. Hitchman, 5 Watts, 454; Clay v. Cottrell, 18 Pa. 413; McNaughton's App., 101 Pa. 550; North Penna. Coal Co.'s App., 45 Pa. 185; Story on Partnership, sec. 148; Perth Amboy Terra Cotta Co.'s App., 124 Pa. 368; Beeson's App., 2 Atl. Rep. 683; Ellinger's App., 114 Pa. 509.

Joint debtors as between themselves and their creditors are each liable for the whole debt, but as between themselves each is liable only for his proportion thereof, and as to the rest, each is surety for the others: Ackerman's App., 106 Pa. 1; Sheldon on Subrogation (2d ed.), p. 273; Milligan's App., 104 Pa. 503; Shamburg v. Abbott, 112 Pa. 6; Graff, Bennett & Co.'s Assigned Est., 139 Pa. 75; Lidderdale v. Robinson, 12 Wheaton, 594; Miller's App., 119 Pa. 631.

A settlement of partnership business is not always required before subrogation can be allowed: Frow, Jacobs & Co.'s Est., 73 Pa. 466; McCormick v. Irwin, 35 Pa. 117; Pacific Mail Steamship Co. v. New York, H. & R. Mining Co., 3 Am. & Eng. Decisions in Equity, 169; Gross v. Davis, 87 Tenn. 226.

A decree of substitution cannot be made, so long as any part of the superior creditor's claim remains unsatisfied, as until then he is entitled to the sole direction and control of his security and of all actions, remedies, etc.: Graff, Bennett & Co.'s Est., 139 Pa. 69; Musgrave v. Dickson, 172 Pa. 629.

The right to enforce subrogation depends upon the equity of each case. It may be enforced by the debtor or by the creditor, as the case may be: Searight's Est., 163 Pa. 210; Gearhart v. Jordan, 11 Pa. 331; Huston's App., 69 Pa. 488; Datesman's App., 77 Pa. 248.

OPINION BY MR. JUSTICE DEAN, November 14, 1898:

In the year 1885 Lantz, Braden, Spragg, Montgomery, Dowlin, Inghram, and this assignor, Abner Hoge, seven in all, residents of Greene county, formed a parol partnership to buy and sell real estate and to buy, raise, feed and sell cattle; each was to have an equal interest in the business and share equally in profits and losses. By consent of all, Lantz, who was cashier of the Farmers' and Drovers' National Bank of Waynesburg, acted as general manager of the business. There was no fixed partnership capital. Six of the partners, leaving out Inghram,

borrowed on their joint and several judgment notes from John Buchanan, $3,400 and from Henry Grimes $6,000 which amounts were put into the partnership business. Inghram paid into the partnership $2,500 in cash and cattle. In the course of business the partnership purchased what was known as the "Huffman farm," in Greene county, for $17,615; payment was made by conveying to the grantors, Huffman and wife, Nebraska land belonging to the partnership at the value of $10,920; the partnership also assumed a mortgage of $5,000 on the Huffman farm; the balance, $1,695, was paid to Huffman in cash out of partnership funds. The business proved financially disastrous; Buchanan and Grimes entered of record their judgment bills; every one of the partners, except Inghram, became insolvent and made assignments for benefit of their creditors. The Huffman farm was sold on executions against the partnership for $11,000. After satisfying the $5,000 mortgage, there remained $5,291.01 which was distributed to partnership creditors, $1,215.01 going to the Buchanan and $2,194.33 to the Grimes judgment. In distributing the assigned estate of Dowlin, $2,590.61 was given the Buchanan, and $4,122.84 to the Grimes judgment; no part of the other assigned estates went to these judgments. In distributing the balance on the account of Hoge's assignee, the auditor found that Buchanan and Grimes were partnership creditors, and could not come in on the fund raised on the individual estate of Abner Hoge, to the exclusion of his individual creditors. Dowlin's assignees having presented a claim as coobligor of Hoge on the ground that Dowlin's estate having paid $6,713.45, the assignees were entitled to subrogation to the extent of half this payment, it was rejected by the auditor for the reason that no partnership account had been settled, and until such settlement the right to subrogation could not be determined. He therefore distributed the whole balance, after deducting costs and liens, to wit: $2,966.58, pro rata among the unsecured individual creditors of Hoge.

After hearing, the court of common pleas set aside the report, saying in its opinion: "We agree with the auditor that the evidence discloses a partnership between the parties named; it may further be conceded that the money obtained by six of these partners, and for which the notes were given to Colonel Buchanan and Henry Grimes, was obtained by the makers of these

notes for the purpose of being used and was used in the business of the partnership. Beyond this, we cannot agree with the auditor in his findings. We have failed to discover any evidence that would warrant the auditor or the court in finding that this money was borrowed by the makers of these notes on behalf of and for the partnership, or that there was any authority given by the partnership to obtain this money as a loan. On the contrary, the evidence shows that the money was borrowed by the individuals whose names are signed to the notes, for themselves to put into the partnership, and not as a partnership fund to be used by the partnership." We entirely concur in this finding of the court; there is an entire absence of evidence tending to show that the lenders parted with their money on the credit of the partnership, or that the borrowers received it as a loan to the partnership. Without any bad faith to the lender they might have divided the money among them, and each have used his share for such purpose as suited his inclination; or they might have agreed among themselves to use it for the purchase of lumber, coal or iron. By the instruments they were simply joint and several obligors for repayment of the amount borrowed to the lenders. And this is all they were; in equity as between themselves each was bound to equal contribution in payment, and if one paid more than the others, those who had paid less were bound to contribute so as to equalize the payments.

But we think the learned judge of the court below was not warranted in this conclusion: "We are of opinion that the assignees of John Dowlin should be subrogated and allowed to participate in the distribution of the fund to the amount paid out of the estate of John Dowlin on the Buchanan and Grimes judgments." It appears that the Buchanan and Grimes judgments sought and obtained distribution from the money realized from the Huffman farm, on the ground that they were partnership debts, and the fund was a partnership asset; then they claimed distribution from the fund realized from the Dowlin assignment, and are now paid in full. It is immaterial whether the awards from these funds were properly made; none of the parties to this appeal appear to have objected then, nor do they here deny the lawfulness of those distributions. We have then the case of Dowlin a co-obligor contributing more than his share

to the payment of the debt, and his individual creditors asking
to be subrogated to the rights of Buchanan and Grimes on the
joint and several obligations on this fund raised from the in-
dividual estate of a co-obligor.   The fund here for distribution
is raised wholly from the estate of Hoge, and in equity belongs
to Hoge's creditors.   If there be any superior equity in the
creditors of Dowlin, entitling them to have refunded the one
half of the amount contributed by Dowlin's estate, the right of
subrogation would exist.   But we see no such equity.   There
were six obligors in these judgments; as concerned the obligees,
they could collect from either one the whole debt, and if they
did so, that raised an equity in favor of the one so paying against
his co-obligors which he could assert by action against each for
one sixth; but if all were insolvent, as here, and a large part
of the obligation had been paid by one to the disadvantage of
his individual creditors, that gives the latter no equity to insist
on contribution of one half, to the prejudice of individual cred-
itors of another co-obligor.   It was their misfortune that their
debtor had signed an obligation subjecting his estate to legal
liability for the whole debt; they now ask that the individual
creditors of another obligor shall halve the misfortune with
them, although there was no superior obligation on part of Hoge
to pay the half that any other paid.   As is said in McCormick's
Admrs. v. Irwin, 35 Pa. 117, "The reason why subrogation is
not allowed to one partner against his copartner or to one merely
a joint debtor against his codebtor, is because, that as between
them, there is no obligation to pay the debt resting upon one
superior to that which rests upon the others."   It is argued
that a clearly implied obligation, as between the obligors them-
selves, was that as each was bound to pay one sixth, each by
reason of the joint obligation was practically a surety for the
others to that amount, and the obligation of each to pay the
one sixth for the others was a superior one, and therefore as to
him who involuntarily paid it for another, he was to that extent
entitled to subrogation.   We think equity will sustain subro-
gation that far, but no further.   And one sixth of the sum paid
Buchanan and Grimes out of the Dowlin funds should be re-
funded out of the Hoge fund, and the decree of the court be-
low with this modification is affirmed.