# ASA C. SHARP

## *vs.*

## THE STATE OF MARYLAND, for the Use of Theodore F. Brown, Trustee.

*Administrator's Bond—Action Against Sureties—Dismissal as to Part of Defendants—Joint and Several Liability—Limitations—Appointment of Administrator— Equity Court—Appointment of Trustee.*

A declaration upon an administrator's bond, fully stating, in chronological order, the events leading up to the giving of the bond, and the breaches thereof, *held* not demurrable as being a mere statement of conclusions of law.                    p. 555

In an action against the surety on an administrator's bond, statements made by the principal in the bond, out of the presence of defendant surety, are not admissible against the latter.
                                                    p. 556

That the verdict rendered in favor of plaintiff was for a sum larger than that claimed in the declaration is a matter to be brought to the attention of the lower court by a motion for new trial, rather than made a subject for appeal.          p. 556

A gratuitous surety on a bond is entitled to a strict construction of the obligation created by the bond.          p. 556

That, in an action against the principal and the two sureties in a joint and several bond, the plaintiff directs a *non pros.* as to the principal and one of the sureties, does not affect his right to proceed against the other surety, even though they are all residents of the county in which the action was brought.
                                                  pp. 557, 558

Limitations begin to run as against an action on an administrator's bond only from the occurrence of a breach of the condition of the bond, and not from the date of the bond.     p. 558

Where the Orphans' Court relieved the original executors from further performance of their duties at their own request, while there was property of the estate still in their hands, the court had jurisdiction, under Code, Art. 93, Sec. 30, to appoint an administrator to further conduct the administration.   p. 559

No appeal having been taken from the action of the Orphans' Court in appointing an administrator, and the time for appeal having passed, the Court of Appeals cannot review such action in a suit on the appointee's bond as administrator.     p. 559

A Circuit Court, sitting in equity, while it has no power to appoint an administrator, or to remove one previously appointed, has power to appoint a trustee to carry out and give effect to the will of decedent, and to authorize such trustee to bring suit on the bond of an administrator previously appointed.

pp. 559, 560

Where by the terms of a will the duty of reducing the personal estate to cash, and safely and securely investing it, was confided to no one, either by name or description, this was a duty appertaining to the executors, or to the administrator, which subsisted until such time as by the terms of the will the fund became payable to the remaindermen ultimately entitled.

pp. 560, 561

Where the last account of the original executors under a will showed an undistributed balance in their hands, and, upon their discharge and the appointment of an administrator, this balance was turned over to the latter, as evidenced by his giving a receipt therefor, it cannot be contended that the estate had been fully administered by the executors, and that no part thereof passed into the administrator's hands.     p. 561

The mere investment of funds by an administrator does not constitute a complete administration, so long as the possession or control of such investments remains in his hands.     p. 561

*Decided January 14th, 1920.*

Appeal from the Circuit Court for Howard County (FOR-SYTHE, J.).

The cause was argued before BOYD, C. J., BURKE, PATTI-SON, URNER, STOCKBRIDGE and ADKINS, JJ.

*J. Craig McLanahan* and *James Clark,* with whom were *Daniel M. Murray, William Lentz* and *France, McLanahan & Rouzer* on the brief, for the appellant.

*Guy W. Steele,* with whom were *Joseph L. Donovan* and *Theodore F. Brown* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

When William W. Scrivenor executed his will in the summer of 1884, it contained among others the following provisions:

"Should my said wife take the one-third of my personal property as hereinbefore bequeathed to her for life, then I direct my executors hereinafter named to convert the same into money by sale and collections, and that it be invested securely and the interest thereon paid to my said wife annually or semi-annually during her life, and at her death the principal sum and any interest that may be owing thereon to be divided among the children of my said son, William H. Scrivenor, as aforesaid.

"I give, bequeath and devise all the rest and residue of my estate, both real and personal, unto my said son, William H. Scrivenor, for and during his natural life, and at his death to his children absolutely and in fee simple, in equal portions share and share alike; and I also devise to the said children of my said son, William H. Scrivenor, the fee simple title to the real estate which my said wife may take under this will, or under the laws of the State of Maryland.

"And I hereby further direct that the said residue or that portion of my personal property bequeathed to my said son, William H. Scrivenor, for life, shall be converted into money by collections and sale or sales, and the money arising therefrom invested securely and the interest thereon paid to my said son during his life, and at his death the principal sum and any interest owing thereon to be divided among · his children as aforesaid."

He named as his executors J. Oliver Wadlow and Marshall S. Selby.

Mr. Scrivenor died in the same year, and his will was proven in the month of November. Letters were granted to the executors named in the will, who carried on the administration of his estate, and between that time and 1894 passed three accounts.

In the last named year (1894) Wadlow and Selby applied to the Orphans' Court of Carroll County, from which Court their letters had originally issued, to be discharged from the further administration of the provisions of the will, and they were so discharged about a month after their application.

On the same day upon which they were relieved of their duties the Orphans' Court of Carroll County granted letters *d. b. n.* and *c. t. a.* on Mr. Scrivenor's estate to George D. Day, upon his filing a bond for $6,000. This bond was duly filed, with Asa C. Sharp, the appellant here, and Edward W. Day, as sureties.

Nothing appears in the record to show any act upon the part of George D. Day in connection with the estate until 1912, when having executed a deed of trust for the benefit of his creditors, a claim was presented on the part of the children of William H. Scrivenor, the ultimate remaindermen under the will of William W. Scrivenor, for funds in Mr. Day's hands, under the terms of the will and the order of Court appointing him.

A dividend was allowed upon the claim and demand made upon Mr. Day and his sureties for the balance, which, however, proved ineffective, and this suit is an endeavor on the part of Theodore F. Brown, acting for those beneficially entitled under Mr. Scrivenor's will, by virtue of a decree of the Circuit Court for Howard County, in Equity, against Asa C. Sharp, one of the sureties on Mr. Day's bond, to recover the balance due.

The pleadings are rather voluminous, but have been somewhat simplified by the action of the Circuit Court for Howard County, by which the first count of the *narr.*, and the fourth, fifth, sixth, eighth, twelfth, thirteenth and fourteenth pleas, were disposed of on demurrer.

The only one of the rulings in this respect which this Court is asked to consider at this time, is the action of the Court in overruling the demurrer to the second count of the declaration. The chief ground upon which this is alleged to have amounted to error on the part of the Court is that it is a mere statement of conclusions of law rather than of fact. If such were the case the objection would be entirely valid, as appears from the cases of *Smith* v. *Turner,* 101 Md. 584; *Archer* v. *State,* 74 Md. 450, and numerous earlier decisions. But a close examination of this count fails to justify this contention. The count is an unusually full statement, in chronological order, of the events leading up to the giving of the bond, and the breaches thereof, and no reversible error can be predicated upon this ruling of the Court.

The bills of exception, six in number, deal some with evidence, and the sixth one with the action of the Court in refusing all of the prayers. But inasmuch as the questions raised by the objections to testimony and the motion to strike out certain evidence were involved in the ruling upon the prayers, it would protract this opinion unduly to consider each one *seriatim,* and there will be a clearer understanding arrived at of the principles involved in this litigation by taking them up according to the subjects to which they severally relate, whether embodied in objections to evidence, or in the prayers, or in both.

There are, however, two of the bills of exception which do not necessarily fall within the foregoing generalizations. First, that with reference to the defendant's fourth prayer, which amounts to a demurrer to the evidence, and as will be seen a little later could not be sustained, as there was ample testimony to call for the submission of the case to a jury or.

as occurred in this instance, the Court sitting as a jury; second, the motion to strike out the evidence of Joseph L. Donovan, which constitutes the fourth bill of exception.

In his evidence Mr. Donovan had purported to give certain statements made by George D. Day, the principal named in the bond, in his presence, to the children or some of them of William H. Scrivenor, a son of the testator and life tenant under his will, but the Court refused to strike out this evidence, and in so doing committed error, as the suit was between one of the sureties on the bond of Mr. Day, Asa C. Sharp, and a trustee representing the ultimate remaindermen under Mr. William W. Scrivenor's will. The statements were made out of the presence, and so far as appears, without the knowledge of Mr. Sharp. The refusal to strike this out cannot, however, be regarded as prejudicial error sufficient to justify a reversal, for the reason that all of the main facts sought to be brought into evidence through Mr. Donovan were in the case from other sources and to which no valid objection could have been made.

One other objection which has been strongly urged on the Court as a ground for reversal, is to the effect that the verdict rendered was for a larger and different sum than that set out in the *narr.* It does seem a little strange that with a bond given for $6,000, there should be a claim for only $600 damages in the second count of the declaration, and strongly suggests, though there is nothing in the record to show it, that this was the result of some clerical blunder in transcription. But be that as it may, this was a question properly to be brought to the attention of the trial court by motion for a new trial, rather than made a subject for appeal. A motion for a new trial was made in the case which was overruled, and there is not sufficient apparent in the record for this Court to disturb that ruling, or to indicate any abuse of power upon the part of the lower Court in its ruling.

It is vehemently urged upon behalf of the appellant that Mr. Sharp being a gratuitous surety on the bond of Mr. Day

is entitled in this case to have a strict construction of the obligation created by the bond. This is a legal proposition so often passed upon in this State, and with entire unanimity of ruling, that there can be no question of the soundness of the proposition, and with respect to the various defenses sought to be adduced they are to be considered with this principle always borne in mind.

The case was originally a suit against the principal and both sureties, but during the progress of the trial, for reasons of his own, the appellee directed a *non pros.* to be entered as to George D. Day and Edward W. Day, leaving it at its conclusion simply a case against Mr. Sharp, one of the sureties on the bond. The appellant now contends that by this action the liability of Mr. Sharp has been enlarged from what it was originally; that inasmuch as both the Days are residents of Howard County the Act of 1825 applies, and that there can be but one suit upon the bond. The Act of 1825 was amended twice into the form in which it now appears in the Code.

The Act of 1870, Ch. 329, and its effect were considered very carefully in the case of *Cruzen* v. *McKaig,* 57 Md. 454, the opinion in which was prepared by the late CHIEF JUSTICE ALVEY. That case arose with regard to a covenant contained in a lease, and the question was whether the liability of the obligors was joint, or joint and several, and it is there concisely stated that, even if the contract be regarded merely as a joint contract "it is still the contract of the party sued, and recovery may be had against him; and though he be declared against as the only party bound by the contract."

In this case the liability created by the bond was a joint and several liability, and reviewing the various acts and adjudications upon the subject, Mr. Poe in the first volume of his work on *"Pleading and Practice,"* Section 382, sums up the law in the following language: "All residing in one county shall be sued in one action. This Act (the Act of 1825) does not require the obligee to sue all the obligors, he

may sue one only if he pleases, but if he elects to sue one he cannot afterwards bring another suit on the same instrument against another obligor residing in the same county without being subjected to be non suited."

. Practically the same question as is here raised was before this Court in *Wilson* v. *Kelso,* 115 Md. 162, and in the opinion in that case prepared for this Court by JUDGE BURKE, it is said: "Where the obligation is joint and several, an ancient and familiar rule of law forbids it to be treated as several as to some of the obligors, and joint as to the rest. The obligee has the right of choice between the two methods of proceeding; but must resort to one or the other and cannot combine both."

Then after discussing the legislative modification of the Act of 1825, JUDGE BURKE concludes his consideration of the subject in these words: "The plaintiff by dismissing the suit as to all the other defendants elected, as he had a right to do, to pursue his remedy on the note against the defendant alone."

It will be apparent from the foregoing that there is no advantage to be derived by the appellant from the fact of the entry of a *non pros.* in the suit with respect to George D. and Edward W. Day.

A plea of limitations was interposed by the appellant by his third plea, and the same defense is sought to be set up in the defendant's second, third, fifth and tenth prayers. Exactly what the idea of the appellant was as to the time when limitations would begin to run is not clear. Apparently from the language of the prayers he assumes the date of the bond as the time, while the law is well settled that limitations begin to run in such a case only from the time when a breach of the condition of the bond occurs.

· · In his brief the appellant does not deny that there was a breach in the condition of the bond, and then somewhat curiously speaks of it as a "continuing breach." If this be true, certainly there was no room to invoke the plea of limi-

tations. If we turn to the evidence there is nothing to show conclusively any breach of the conditions sufficient to afford a ground of action earlier than the year 1912, and sufficient time has not elapsed since then to admit of this defense.

An attack is also made upon the jurisdiction of the Orphans' Court of Carroll County to appoint Mr. Day as administrator *d. b. n.* and *c. t. a.* of William W. Scrivenor in 1894. That Court had upon their own application relieved the original executors named in the will of Mr. Scrivenor from a further performance of their duties. As shown by the third account of the executors, there was certain property then in their hands, whether properly so or not will be considered later. The appointment of an administrator to further conduct the administration was a matter, under the terms of the Section of the Code applicable thereto (Art. 93, Sec. 70) within the jurisdiction of that Court, and the personnel of the appointee a matter resting in its discretion. That Court acted in making the appointment of Mr. Day, and no appeal was taken from the action, and the time for any appeal has long since passed, and without further considering the technical objection now sought to be raised against the action, the question cannot be said to be now properly before this Court.

An attack is also made upon the action of the Circuit Court for Howard County in appointing Theodore F. Brown as a trustee, based upon the assumption that by so doing the Circuit Court for Howard County was assuming to revoke the appointment of George D. Day as administrator, and that was a matter beyond the power of the Circuit Court.

Stated in this way the contention is perfectly true as to the relative jurisdictions of the two courts, but a careful examination of the decree of the Circuit Court for Howard County discloses the fact that nowhere does it assume any such jurisdiction. What it does do is to appoint Theodore F. Brown to administer as trustee certain of the provisions of the will of Mr. Scrivenor. Such a proceeding is entirely

compatible with the law and practice in this State, and in the case of *Willinger* v. *German Bank,* 132 Md. 237, this Court sanctioned the appointment of a receiver, but without removing or attempting to remove the administrator of the estate there under consideration.

There seems to have been some doubt in the mind of the draftsman of the decree, passed in the Circuit Court for Howard County in 1917, by which Brown was appointed, as to whether Day held the funds in the capacity of administrator or trustee. The occasion for such a doubt it is a little difficult to understand. Such a question has a number of times arisen in cases where by the terms of the will the same person was named both as executor and as trustee, and it has been held that where the time had arrived when the executor should have turned over the funds in his hands as executor, to himself in his capacity as trustee, that the law would presume this to have been done; but this is not a condition which obtains in this case, where the original executors, the administrator *d. b. n.,* and the trustee appointed by the Circuit Court for Howard County, were all different. There was, of course, no power in the Circuit Court either to remove or appoint an administrator, while there was ample power for the appointment of a trustee to carry out and give effect to the provisions of the will of Mr. Scrivenor, and that was all that was attempted to be done by the decree appearing in this case.

It is perfectly clear that Mr. Day was derelict in many, if not most particulars connected with the performance of his duties as administrator. But it is equally true that for these derelictions he could at any time have been called to account by the parties interested, had they so desired, in the Orphans' Court of Carroll County.

By the terms of the will the duty of reducing the personal estate to cash, and safely and securely investing it, was confided to no one, either by name or description, and in such a case that was a duty pertaining distinctly to the execu-

tors, or if the executors had not qualified, or were succeeded in their office by an administrator, to the administrator, and this was a subsisting duty until such time as by the terms of the will the fund became payable to the ultimate remaindermen. *Hindman* v. *Tosh,* 61 Md. 471; *Siechrist* v. *Bose,* 87 Md. 284.

It is set up by the plaintiffs, and further reference is made to it in the prayers, that the estate had been fully administered, and that therefore there could be no liability of the surety upon the bond. This can be very readily disposed of. If there had been a full administration by the original executors there was no reason for the appointment of Mr. Day, or the giving of the bond upon which this suit is brought.

But independently of that, the third account of the original executors shows an undistributed balance in their hands, consisting of at least one mortgage, a number of small loans, and a small amount of cash. Upon Mr. Day's appointment and qualifications these seem to have been turned over to him, and he gave a receipt or release to the original executors for the same. This evidence is conclusive of the fact that there was property belonging to Mr. Scrivenor's estate passing into Mr. Day's hands.

It is asserted and not denied that no account was ever presented or passed by Mr. Day in the Orphans' Court of Carroll County. The mere investment of funds and nothing more has never been treated as complete administration, while the possession or control of such investments remained in the hands of the executor or administrator *c. t. a.* by whom they were made, or to whose hands they had passed from an antecedent executor.

Mr. Day may or may not have collected some of the loans, investments so-called, of this estate; if he did so that fact should have appeared; if he did not it was his plain duty to have applied to the Court from which his letters were derived for instructions as to the course which he should follow with regard to them, but it does not appear that he ever did

this. Apparently from some source or other, just what source is uncertain, he derived enough to pay the interest upon these so-called investments down to the year 1912, and it is further clear that a dividend was allowed to the appellee as of a balance due from the estate of Mr. Day under the deed of trust for the benefit of creditors. In such a condition to call an estate completely administered is a misuse of language.

Many of the points which have been considered arose in the case of *Smith* v. *Michael*, 113 Md. 10, and in the opinion filed by JUDGE BOYD in that case will be found an exceptionally full and clear discussion of the law in this State relative to the questions raised.

Finding no error in the ruling of the Court for Howard County sufficient to justify a reversal, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*