## McKAY *v.* PAULSON

[No. 2, October Term, 1956.]

*Decided November 5, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Earl J. Lombard* and *James F. Vance,* with whom were *Forest Gordon* and *Lombard & McClure* on the brief, for the appellant.

*Elizabeth H. Allen* for the appellee.

HENDERSON, J., by special assignment, delivered the opinion of the Court.

In this case Mrs. Paulson, a divorced wife and the appellee, had secured a judgment against her former husband, William M. McKay, Jr., the appellant, for money expended by her for necessaries furnished to the two minor children of the parties. The husband has appealed to this Court.

The parties had been living in their own home on Hanover Street, Silver Spring, Montgomery County, Maryland, and had had two daughters, one of whom is now twelve and the other seven. Both parents had been injured in an auto-

mobile accident, and for the time being they were unable to work. Being in financial straits, it was decided the wife should take the two daughters to her parents' home in Norfolk, Virginia, while he went to live with his sister in Silver Spring. This was done in September, 1951. Their home was rented, and the furniture was placed in storage, her father assuming the cost of this.

After a short stay in Norfolk the wife with the two daughters and her mother moved to Florida. After living there in the mother's apartment for some months, the wife recovered sufficiently to be able to work. She then rented an apartment for herself and her children.

On September 4, 1952, the wife secured an absolute divorce in Florida. In the same proceeding she was awarded the custody of the two children, the Court retaining jurisdiction of these children and reserving "the right to later determine the amount of support and rights of visitation." The husband had known of the divorce action, but never entered a personal appearance, nor has he ever requested in the Florida Court the right to see the children or to have them visit him. The wife married for the second time in September, 1954, and is living in Orange City, Florida, with the second husband and her two daughters. She is employed "part time only * * * in the tax assessor's office". She did not state the amount of her earnings, nor was she asked this on cross-examination.

The husband is living with his sister in Silver Spring. During the years 1952, 1953 and 1954 his salary as a governmental employee was "from $3100 up to about $3400". By outside work he was able to earn about $450 annually.

On December 30, 1954, she brought suit for reimbursement of the amount expended by her for the support of the two daughters; and it was tried before a jury in Montgomery County in January of this year. A judgment in her favor resulted in his present appeal. Facts, other than those stated above, will be discussed below in connection with the questions raised by the appeal.

On behalf of the husband-appellant it was urged that, because the wife "for reasons of her own" had taken the chil-

dren from the state of matrimonial domicile and that of the father's residence, she could not recover.

But this contention is not legally maintainable. As was said in *Kriedo v. Kriedo,* 159 Md. 229, 231:

> "It is settled in this state that a father is under the common law obligation to support a minor child, without regard to a decree divorcing the parents. *Blades v. Szatai,* 151 Md. 644."

The husband has not attempted to impeach the validity of the Florida decree by proving the Florida Court had no jurisdiction because the wife had never acquired a domicile there. And, as was decided in *Brewster v. Brewster,* 204 Md. 501, 505, the foreign divorce decree "must be presumed to be valid and given full faith and credit" "until it is declared to be invalid by a competent court".

The appellant has cited two New Jersey cases as controlling; but neither upholds his contention. In *Turney v. Nooney,* 21 N. J. Super. 522, 91 A. 2d 418, it was said that a father, *who had been deserted by his wife* (italics supplied) would not be obligated to pay the mother for the support of the child if he desired to keep the child in his own home, but had not been awarded the child because the Court believed that for some sufficient reason the child should remain with the divorced mother.

*Daly v. Daly,* 39 N. J. Super. 117, 120 A. 2d 510, was an action under the Uniform Reciprocal Support Act. The Court held that if the wife had left the State with the children "for purpose of obtaining a foreign divorce on grounds probably not adequate for * * * divorce" she should be compelled to seek relief in a direct proceeding in the New Jersey Court. But a "direct proceeding" is what this former wife has brought in Maryland. And the New Jersey Court went on to say: "Where the wife has a *bona fide* reason for removing the children from New Jersey to the foreign state, which reason is consistent with the children's welfare, and the children are in need of support from the father, the wife may use the Reciprocal Act to obtain relief against their father here for their support". And if she could use the Reciprocal Support

Act she could certainly maintain a "direct proceeding" as she has done here.

It was also argued on behalf of appellant that the husband was "ready, able and willing to support the children at his place of residence" and therefore he was not liable for their support in Florida. Whether the husband had offered to support the children was left to the jury in these words:

> "I further instruct you that should you find that the father had volunteered to support the children, had offered to support the children, and the plaintiff had refused to accept such offer, then you would find for the defendant; but in the event you find that the father refused to support the children, and you will have to judge from the testimony yourself as to what the actual state of affairs [is], then, of course, your verdict will be for the plaintiff, should you find that the necessaries were furnished, and should you find that they were necessary."

There was testimony by the former wife that he had always refused to support them. And even from his own testimony the jury could have found that any offer of support made by him was accompanied by a condition that he have partial custody, a condition that under the circumstances he had no right to impose.

For example on page 36 of the Record Extract is this colloquy:

> "Mr. Lombard:
> Q232 Well, what has been your attitude about supporting your children, Mr. McKay?
> A I would like to have them.
> Judge Anderson: He asked you if you would like to support them?
> Mr. Lombard:
> Q233 Does that involve any arrangement for custody?
> A I would like to have them at least six months a year. I haven't seen them now in almost four years."

See also Record Extract p. 42.

> "Q265  You have not contributed to the support of
> the children since the separation, have you?
> A    Well actually I feel—there was really no
> hardship.  Her father paid her way from Norfolk to
> Florida, and he practically broke up my home.  He
> is a full colonel in the Army."

It will be noted he did not say he was willing to support
them, and that he merely repeated his wish to have them for
part of the time.  And his unwillingness to support them is
borne out by the fact that he never contributed anything to
their support between the time of her divorce and the bring-
ing of the suit.  Prior to the divorce he claims he gave her
twenty dollars in cash, but her testimony was "He sent me
a check for $20 which bounced * * *".

Therefore whether he was willing to pay was a question
which was submitted to the jury as a condition precedent to
a recovery by the former wife; and there was more than
sufficient testimony from which it could be found he had re-
fused to support his two daughters.

The third ground alleged for reversal is that the Court, in
the instructions to the jury, used words which required the
jury to find for the plaintiff for support between September
4, 1952 and December 30, 1954.  If the sentence complained
of had been the only instruction given to the jury there might
well be weight to this argument.  But when the possibility
of misunderstanding by the jury was pointed out to the trial
Judge by appellant's counsel, the Judge made it clear to the
jurors that recovery, if they found a verdict for the plaintiff,
was limited to support for that period.

And the charge read in its entirety proves unmistakably
that the jurors could not have been left under the impres-
sion that they must find for the plaintiff in any event.

There is no good legal reason for holding that the husband's
duties to support the children are diminished or abrogated
because the wife's divorce was obtained in a foreign jurisdic-
tion.  This Court is required under Article IV, section 1 of
the Constitution of the United States to give full faith and

credit to the Florida decree, which includes an award of the custody of the children. Prior to the institution of this present suit the father had taken no steps to secure even partial custody. He said this was because he had received legal advice to the effect that if he went to Florida he might be found responsible for his failure to support them up to that time. And at one time he had filed a suit here in Maryland, which he seems to have dismissed after he learned his wife was asking for a divorce on the ground of mental cruelty rather than adultery. In fact it might be deduced from his own testimony that he was willing she get the children if he did not have to support them.

See also Record Extract p. 33.

"Q215 When did you first hear from your wife concerning her desire for a divorce?
Mrs. Allen: Objection.
Judge Anderson: Objection over-ruled.
A    It was roughly about six or seven months later. She called me on the 'phone and said something about would I give her a divorce, and I was reluctant to at first; I didn't like the idea of not seeing my daughters any more, and it struck me as surprising.
Q216 At that time was there any question concerning the custody and support of the children?
A    There was nothing said, because no divorce had gone through then."

See also Record Extract p. 37.

"Judge Anderson: Under the divorce decree your wife was awarded custody of the children?
A    I guess so, your Honor. I never could understand that though. That was down in the State of Florida.
Q    You were notified about the suit, weren't you? You were notified she had sued you for divorce. You knew you were being sued by your wife for divorce, in Florida, didn't you?
A    Yes, sir.

> Q    And you got a copy of the Bill of Complaint, didn't you?
>
> A    I got the divorce decree.
>
> Judge Anderson (continuing)
>
> Q    You didn't contest the case in Florida, did you?
>
> A    It seems to me I did contest it.
>
> Q    You filed a suit here in Maryland, didn't you?
>
> A    At first she had some kind of charge on me for running around with another woman, and I told her I wouldn't go along with that.  Later she came up with mental cruelty and I said I would go along with that."

The effect of Section 1 of Article 72A of the Maryland Code of 1951 (as it was amended by Chapter 678 of the Acts of 1951) was never raised in the Circuit Court, and therefore cannot be considered here.  The original act was adopted in 1929 (Chapter 561) and stated that both the father and mother are the joint natural guardians of a minor child and are *equally* charged with its care, nurture, welfare, and education.  Chapter 678 of the Acts of 1951 amended this section by striking out the word *equally* and charging the parents jointly and severally with the *support,* care, nurture, welfare, and education.

The appellant also pointed out as a ground for reversal that the Court refused a motion to strike out the hearsay testimony of Lucille Florance (R. Ex. p. 31).  It would have been proper for the Court to instruct the jury to disregard her testimony as to facts on which her only knowledge was obtained from the statement of others.  Her hearsay testimony was that the former wife had had the custody in Florida of the two children and had provided for their support.  Inasmuch as the divorce decree awarded the custody to Mrs. Paulson it was clear she had legally their custody.  And there was no real contention by the husband that she had not supported them, though he claimed her parents had gratuitously supplied her with some funds.  She had admitted advances, but testified she was under obligation to repay.  His main con-

tention was that he was not legally liable to reimburse her, and that in any event he did not owe the amount she claimed as due her. The hearsay testimony of Mrs. Florance was as to none of these contested facts. Therefore the well established rule applies that the wrongful admission of harmless testimony is not reversible error. *Snibbe v. Robinson,* 151 Md. 658, 663; *Union Tr. Co. of N. J. v. Knabe,* 122 Md. 584, 610-611; *Sharp v. State,* 135 Md. 551, 556.

Appellant also urges that a mistrial should have been granted because the following took place during the re-direct examination of the husband by his counsel:

See also Record Extract p. 45.

> "Q274  Then during this period that you have had the management of the house, you have had an income over and above the trust payments of how much?  Is it roughly $45 or $50 a month?
>
> A  My agent wasn't able to get $120.00; he has only been getting $110.00 a month, and he may be only able to get $100.
>
> Judge Anderson: You would like to sell the house, wouldn't you?
>
> A  I would be perfectly willing to sell the house and give her half of it, but she wants it all.
>
> Judge Anderson: Oh now, that isn't true.
>
> Mr. Lombard: I make a motion that a mistrial be declared on the basis of His Honor's statement that the statement made by the witness was not true, for that this statement of the Court impugns the veracity of the witness.
>
> Judge Anderson: Motion over-ruled.
>
> Mr. Lombard:
>
> Q275  Mr. McKay, you stated that you were willing to sell the house but that your wife wouldn't agree to it.  Would you tell the Court just what you meant by that, Mr. McKay.
>
> A  Well it seems to me that I thought she was trying to sue me for $10,000.00.
>
> Mrs. Allen: Objection.
>
> Judge Anderson: Objection sustained."

It would have been better had the trial judge used the expression: "Mr. McKay, are you sure that is a correct statement?" and then interrogated him as to what if any negotiations or other proceedings had taken place between the parties, with which the Judge was familiar. Or the Court could have instructed the jury to disregard the remark. It dealt with a property owned by McKay and Mrs. Paulson as co-tenants as a result of the divorce, and the right of sale of which was not at issue in the claim then before the jury. Either party after the divorce had a right to require it to be sold, and each party had a right to one-half of the net proceeds —unless and until the former wife had been able to secure a judgment against him because of her support of the children. And, as a matter of fact, the husband had been receiving the entire rentals from the property from approximately the time of the divorce to the time of the trial.

It will be noted that after the remark, which is now objected to, counsel for the husband asked him to explain what he meant by saying his wife would not agree to the sale of the property. His answer was "Well it seems to me that I thought she was trying to sue me for $10,000.00." This answer was objected to, and the objection was sustained. It was not an adequate explanation of his statement that the wife wanted more than her legal half of the proceeds of the sale of the former home. Counsel for the husband went no further with his efforts to have the husband explain what he meant, possibly because it was evident to everyone by then that it was almost impossible to get from the husband a direct answer to any relevant question.

As has been said above it is not every mistake during the trial that constitutes reversible error. It all depends upon the circumstances of the particular case. In *Johnson & Higgins v. Simpson,* 163 Md. 574, 588, it was said: "In the interest of the orderly administration of justice, and to avoid useless expense to the state and to litigants in its courts, it has long been the settled policy of this court not to reverse for harmless error. And as a corollary of that policy, it has held that in all cases the burden is upon the appellant to show

injury as well as error. *Middendorf v. Refrigerating Co.,* 117 Md. 23, 82 A. 1047."

The statement here complained of was made with reference to the sale of the home. The matter of the rentals from this had been gone into by counsel for the husband, although it had· been shown already by the testimony of both parties that *since the divorce* the husband had received all, or nearly all, of the rentals. Counsel for the husband did not at the time of the incident, or later on when he was conferring with the Judge regarding the proper instructions to be given to the jury, make any further request that the Judge explain his remarks to the jury or instruct them to disregard them. The instructions made it plain that what was being sued for was reimbursement for necessaries furnished, and that was the only question for them to decide. Therefore under all the circumstances the error was not prejudicial. *Adams v. Benson,* 208 Md. 261, 270.

*Judgment affirmed, with costs to the appellee.*