GIBA, ET AL. *v.* BASTIAN, ET AL.

[No. 334, September Term, 1966.]

*Decided May 2, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Nelson Deckelbaum* for appellants.

*Hyman Shapiro* for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Mr. and Mrs. Bastian, the owners of property in Washington, 1721 P St., N. W., sued Daniel Melnick, the prospective vendee in a contract of sale of the property for damages of

$2,000 resulting from the vendee's failure to consummate the contract, equating the damages to the amount of the deposit. The trial judge found for the owners and the vendee has appealed.

The contract for sale of 1721 P Street provided as follows:

> "This contract is subject to the purchaser obtaining S.P. Zoning. If the S.P. Zoning cannot be obtained the contract is null and void and the deposit shall be returned and all parties shall be relieved of any further obligation to one another and to the broker. The purchaser agrees to file for rezoning within sixty (60) days from the date of this contract and to take all reasonable steps to secure decision from the Zoning Commission as soon thereafter as possible. Settlement will be made within sixty (60) days from the date of such rezoning or November 30, 1962, whichever is the latter.
>
> "Seller understands that the purchaser has entered into sales contracts to purchase Lots 44, 45, 325 and 326 in Square 156, known as No. 1717, 1719, 1723 and 1725 P Street, N. W. It is agreed that if for reasons other than his own default the purchaser is unable to consummate a settlement of said four (4) properties simultaneously with settlement on the subject property the purchaser shall have the right to cancel and terminate this contract by giving the seller written notice to that effect, and thereupon the purchaser shall be entitled to obtain a refund of the deposit made hereunder and all parties shall be relieved of any further obligations to one another and to the broker."

At the trial the parties stipulated that the contract had been duly entered into between them and that the amount of damages to be awarded, if any, would be $2,000. The owners then offered the testimony of Mr. Bastian who said that in the spring of 1962 Melnick had sought to buy some seven contiguous properties on P Street, one of which was 1721 owned by the Bastians, in order to raze them and build an apartment house. The Bastians had entered into a contract with Melnick which was contingent on his obtaining rezoning for apartment use and the obtention within thirty days of contracts for the other adjoining

houses. Nothing came of this, apparently because the other contracts could not be gotten.

In August Melnick reopened negotiations. Bastian stated from the stand: "I said I wasn't going to tie my property up again for thirty days without making sure Mr. Melnick had faith in intending to go forward. Either he did or didn't and if he didn't I didn't want to sign a contract. So this time I insisted before I signed a contract that each of the other parties should have a contract signed with Mr. Melnick and that condition was met," and the contract signed on September 7. On September 24 Bastian received a letter by registered mail from Melnick's agent reading as follows:

> "This is to notify you that per the terms of our contract we have been in contact with District Builders and several attorneys normally accustomed to handling zoning in the District of Columbia and have been emphatically informed that the chances of rezoning this property would be extremely difficult. Because of this information, I am taking this opportunity to notify you that the contract is declared null and void."

The Bastians then called Melnick as their witness. He testified that after he acquired by individual contracts the six properties, 1717 through 1727, he consulted a law firm in Washington, which specialized in zoning cases and was recognized as skilled and experienced in the field, and was advised by a partner that it would be hard, indeed, in the judgment of the partner, impossible, to get rezoning for apartment use at the time and that "he did not want to take this case." He further testified that the reason the contract was made contingent on the obtention of S.P. Zoning was that it is necessary first to assemble the several properties "and then go after the zoning" because the zoning is meaningless unless all the properties are in hand. He did not file a petition for rezoning with the District of Columbia authorities because the expert advice he had gotten was that it would be denied and a rejection would hurt the chances of getting any other type of zoning, "it would be a black mark against them," and when he advised the owners of the houses other than the Bastians each agreed with him that

it was preferable not to seek and be denied S.P. Zoning. He said further, referring to each of the four owners (one owned two houses), "we mutually agreed to break the contract." An affidavit of one of these owners was admitted in evidence without objection. The affiant recited that he had been advised that it would be "virtually impossible" to obtain S.P. Zoning and concluded: "That, in my opinion, the said Purchaser, Daniel Melnick, had, in good faith, fully complied with the provisions of the Contract of Sale relating to rezoning, and therefore the termination of said Contract was mutually agreed upon."

All of the testimony came in without objection; moreover, since the Bastians called Melnick as their witness, they are bound by his testimony to the extent that it was not controverted by other evidence. *Proctor Electric Co. v. Zink,* 217 Md. 22, 32; *Lehmann v. Johnson,* 218 Md. 343, 349; *Vokroy v. Johnson,* 233 Md. 269, 272. We said in *Sagner v. Glenangus Farms,* 234 Md. 156, 162, what is equally applicable here, that since testimony as to the meaning and effect of a written contract came in without objection as to admissibility "it is unnecessary to decide whether the evidence would have been admissible over objection because of any ambiguity in the agreement or for any other reason, such as, for example, its bearing on the meaning of technical terms, because there were no objections to its admission. *Montauk Corp. v. Seeds,* 215 Md. 491, 496; *Baltimore Luggage Co. v. Ligon,* 208 Md. 406, 413; and *Trust Co. v. Williams, Inc.,* 168 Md. 588, 597. Having come in without objection, the extrinsic evidence is to be considered, and allowed such force and effect as its weight entitles it in construing the agreement of the parties. *Chesapeake v. Goldberg,* 107 Md. 485, 489."

The Bastian contract specified, as did each of the others, that "This contract is subject to the purchaser obtaining S.P. Zoning. If the S.P. Zoning cannot be obtained the contract is null and void and the deposit shall be returned and all parties shall be relieved of any further obligation to one another and to the broker." Then, in the Bastian contract, the purchaser agreed to file for rezoning within sixty days and to take all reasonable steps to secure a decision from the Zoning Commissioner as soon as possible.

Bastian's testimony was that both his hesitancy in signing the second contract and his insistence on prompt and expeditious seeking by Melnick of the prerequisite rezoning was to insure that Melnick would go forward in good faith and not take the Bastian house off the market for too long a time. In regard to the zoning application proviso, he said that he intended "that the property not be tied up unnecessarily unless there was good faith." Melnick promptly and in good faith sought to accomplish the rezoning and was advised by an expert that it would not be accomplished and that an unsuccessful application would adversely affect the properties. Seventeen days after the contract had been executed Melnick advised the Bastians that the rezoning on which the contract expressly and explicitly was made to depend could not be accomplished. The purpose of the provision as to prompt application to the Zoning Commissioner was met. Had Bastian so desired, he could have had his property on the market in far less time than it would have taken to pursue the zoning application and on the testimony, by which the Bastians are bound, the effort to rezone would have failed.

If the Bastian contract had been the only contract involved, it may be assumed that the failure of Melnick to apply for rezoning, as he had agreed to do, would have been a breach of that contract entitling the Bastians to recover damages. The fact is that five other properties were involved and, it had been mutually agreed, unless all were ultimately available for use in the apartment project, the project could not go forward. Melnick's testimony, binding on the Bastians, is (a) that it was for this reason that the additional contingency was inserted in the Bastian contract (as in the others), reading "if for reasons other than his own default the purchaser is unable to consummate a settlement of said four (4) properties simultaneously with the settlement on the subject property the purchaser shall have the right to cancel," with refund of the deposit to follow, and (b) that when the owners of the houses adjacent to the Bastian house learned of the expert legal advice given Melnick —that rezoning to S.P. would be virtually impossible, if not impossible, to obtain and an unsuccessful try would give the properties a damaging "black mark" against them—they did not desire him to attempt to obtain rezoning and mutually agreed with

him to rescind their respective contracts. When this had been done, the apartment project was put beyond reach and Melnick was relieved of his contract obligations to the Bastians under their agreement in their contract that this would be so.

The Bastians argue, as Judge Moorman found, that Melnick's failure formally to apply for rezoning was a default and that therefore there was a failure of simultaneous settlements of all the properties caused by Melnick's "own default" which does not avoid the Bastian contract. We do not agree.

The testimony, binding on the Bastians, is that Melnick in good faith obtained reliable advice that S.P. Zoning could not be obtained and that each of the owners, other than the Bastians, in good faith accepted the expert's conclusions. Rather than go through the futile act of seeking what was unobtainable, with unfavorable results to his property, each decided to agree with Melnick to rescind the contract covering his property. The decision to rescind and the consequent failure of the apartment project was not brought about by Melnick's default in not going to the Zoning Commissioner—the only testimony is that the ultimate result would have been the same if he had—but by the acceptance in good faith by the various owners of the fact that Melnick had in good faith obtained the reliable assurance that rezoning was beyond reach. They had the right to act as they did on this acceptance by rescinding their contracts and we read the Bastian contract to say that the Bastians agreed that if they did so act they, the Bastians, would lose the sale of their house.

*Judgment reversed, with costs.*