GOLDBERG ET AL. *v.* ANASTASI ET AL.

[No. 294, September Term, 1973.]

*Decided June 21, 1974.*

*Motion for rehearing filed July 18, 1974; denied July 25, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, ELDRIDGE and O'DONNELL, JJ.

*Robert L. Millard* for appellants.

*Ronald L. Early,* with whom were *Harry W. Lerch* and *Lerch, Pillote & Lerch* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This dispute had its origin on 12 April 1972, when Montgomery Realty Company, Inc., agent for the appellees, Joseph F. Anastasi and others, trading as Trio Associates

(Trio), accepted a contract submitted by the appellants, Richard S. Goldberg and R. S. Goldberg Associates (Goldberg), under which Goldberg contracted to purchase an office building at 850 Sligo Avenue, Silver Spring, Maryland, for $905,000.00. A contract provision called for a deposit of $10,000.00, which was seemingly satisfied by the delivery of Goldberg's note for $10,000.00, bearing no interest, and payable at time of settlement, which was to be within 60 days of the acceptance of the contract.

When Goldberg failed to consummate the purchase within the time specified by the contract of sale, and had, for some unexplained reason, either never executed the note which was to represent the deposit, or had recovered it, Trio brought suit in the Circuit Court for Montgomery County for $10,000.00, the amount of the deposit, plus interest. From a judgment in Trio's favor for $10,000.00; Goldberg has appealed.

In entering the judgment from which this appeal was taken, the trial court concluded that Goldberg had breached the contract and that Trio was entitled to a forfeiture of the deposit. Because we reach a contrary conclusion, we shall reverse the judgment entered below.

The contract of sale called for Goldberg to comply with its terms "within 60 days from the date of acceptance hereof by the owner, or as soon thereafter as report on title can be secured, if promptly ordered; . . . ." At settlement, $805,000.00 (of which $10,000.00 was to consist of the deposit) was to be paid in cash, the balance of the $905,000.00 purchase price to be represented by a $100,000.00 second purchase money deed of trust, maturing in three years, with interest at 7%.

Attached to the contract was an addendum, signed for Trio and by Goldberg. Paragraph 5 of the addendum provided:

"That settlement shall take place within 60 days from execution of said agreement. Joseph Anastasi [the owner of a one-third interest in Trio] and Carl Lipoff [an associate of Goldberg's] have agreed to

fly to Atlanta, Georgia, and get a mortgage commitment to settle in 60 days. If no commitment can be obtained to settle at that time this contract will be voided and the Note shall be returned to Buyer [Goldberg]."

It is clear from the record that a mortgage commitment was obtained by 19 May 1972 which remained available until 26 May. It was the availability of this commitment which led the trial court to the result reached below. Unfortunately, the commitment itself was neither before the lower court nor in the record before us. There is in the record extract, however, the text of an agreement with Scott Hudgens Realty and Mortgage, Inc., a mortgage brokerage firm in Atlanta through which Goldberg and Lipoff were expecting to arrange the loan. It is clear, moreover, that what Scott Hudgens Company, apparently an associated mortgage financing firm, in fact obtained was a commitment from Great American Mortgage Investors to lend $2,000,000.00 for 24 months with a "floating" interest rate of 3% over the prime rate.

The difficulty is that the commitment did not conform to the requirements of the addendum to the contract, which contemplated a loan which would permit closing within 60 days from 12 April. The testimony of Mr. Goldberg, and that adduced in his behalf, which was uncontradicted, made it abundantly clear that the mortgage commitment contemplated the erection of an additional building of greater size next to Trio's building in Silver Spring. It was described as containing some 24 exceptions or conditions which would have to have been satisfied before funds would have been released.

Mr. Goldberg testified that compliance with these conditions would have taken between 60 and 120 days from 26 May, the last day on which the commitment could be accepted. Even if the minimum were to be adopted, the matter would have carried well beyond the date specified for settlement by the contract. Carl Lipoff, Goldberg's associate, was of the opinion that between 60 and 90 days would have

been required to obtain the necessary permits from governmental authorities.

As we see it, the obtention by Goldberg of a mortgage commitment which would enable the purchasers to make settlement within 60 days was a condition precedent which had to be met before the purchaser could be required to perform, *see Coopersmith v. Isherwood,* 219 Md. 455, 150 A. 2d 243 (1959); *Griffith v. Scheungrab,* 219 Md. 27, 34, 146 A. 2d 864, 868 (1959).

Judge Hammond stated the applicable law for the Court in *Griffith v. Scheungrab, supra,* 219 Md. at 34, 146 A. 2d at 868:

> "Where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused."

This is but a restatement of the same rule which appears in 6 A. Corbin, *Contracts* § 1252, at 2 (1962). *See Giba v. Bastian,* 246 Md. 508, 229 A. 2d 93 (1967), where the same principle was invoked in a suit for damages for the buyer's failure to perform a contract for the purchase of property upon the condition that it be rezoned. *See also Guardian Constr. Co. v. Dinkin,* 267 Md. 325, 328, 297 A. 2d 242, 243-44 (1972); *Shoreham Developers, Inc. v. Randolph Hills, Inc.,* 248 Md. 267, 276-77, 235 A. 2d 735, 741-42 (1967).

Because it seems to us, under the facts of this case, that a predicate for the recovery and forfeiture of Goldberg's deposit could not be found in proof of the existence of any mortgage commitment, but only in proof of the existence of a mortgage commitment which would have made possible settlement within 60 days of the acceptance of the contract, we shall reverse the judgment entered below.

> *Judgment reversed, costs to be paid by appellees.*