# TRAYLOR ET UX. *v.* GRAFTON ET UX.

[No. 30, September Term, 1974.]

*Decided February 10, 1975.*

650

*Motion for modification or in alternative for rehearing filed March 6, 1975; denied March 10, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE and O'DONNELL, JJ.

*Eugene A. Alexander, III* and *Sidney Blum* for appellants.

*John C. Love,* with whom were *Edwin G. Carson* and *Cameron & Reed* on the brief, for appellees.

O'DONNELL, J., delivered the opinion of the Court.

Early in 1968 Earl Deshner (Deshner), a Maryland and Pennsylvania developer, knowing of the interest of the appellants, Raymond P. Traylor and M. Jacqueline Traylor, his wife (Traylors), in purchasing a small farm, apprised Mrs. Traylor, a real estate salesperson, of a listing with one Philip W. Eppley (Eppley), a York County realtor, of a 115 acre farm owned, occupied and operated by the appellees, Corbin C. Grafton and Margaret K. Grafton, his wife (Graftons), in lower Chanceford Township, Pennsylvania. Deshner, interested in acquiring the farm and in developing the land for a mobile home park, was willing, upon acquisition, to sell off to the Traylors a parcel of approximately 18 acres, including the dwelling. Mrs. Traylor was accompanied by Deshner, who was introduced as her "uncle" in order to conceal his true identity as a prospective developer, when she inspected the property; he counseled her throughout the negotiations, advising the submission of an offer of $44,000, but told her that his backer — one Christopher Peter Eilers of Harford County — would "go as high as $45,000."

After rather minimal negotiations the Traylors, on March 27, 1968, entered into a standard form realty contract provided by the York Board of Realtors, Inc., by which the

Graftons agreed to sell them the farm, dwelling, fixtures, heating and plumbing systems and crops in the ground for $45,000. A deposit in the amount of $500 was made from funds advanced by Deshner.[1] The balance due under the contract "to be paid at settlement," scheduled on or before June 30, 1968, was "subject to obtaining $25,000 mortgage for 20 years at 6% interest. Said financing to be obtained within 30 days of this agreement."

The contract contained, printed therein, a forfeiture provision which read as follows:

"It is mutually agreed that should either party hereto fail or neglect to perform his part of this contract, the injured party may, at his option, elect to pursue his remedy for specific performance of this contract or accept a sum equal to ten (10%) percent of the agreed price of sale as liquidated damages, which said sum the other party hereby agrees to pay."

All acts in connection with the execution of the contract, including the initialed amendment whereby the offer was increased from $44,000 to $45,000 occurred in York County, Pennsylvania. Under it Eppley, the realtor, was to be paid commissions of $2,700.

Immediately following execution of the contract the Traylors and Eppley visited a Delta bank seeking information on the availability of financing, but no mortgage application was ever there made. Shortly after signing the contract the Traylors were introduced to the Eilers who advised that they would "finance the whole deal"; the Eilers had agreed to take a mortgage from the Traylors on the parcel of land to be conveyed to them.

When, several days before the scheduled settlement, Eppley made inquiry of Mrs. Traylor she stated that there was "no problem about financing," and upon receiving

---

1. Deshner claimed that his check to the Traylors for $500 was a "loan" — a notation upon the check reads: "Loan on farm — 90 days." At the time of trial Deshner had instituted suit in the District Court against the Traylors for the $500 advance.

additional assurances from her that the Traylors could obtain the financing, the Graftons, at public auction on June 20, 1968, sold their cattle, all farm implements and moved to another home (which they had constructed). The date for settlement was mutually extended to July 17, 1968, to be held at the office of an attorney in York, Pennsylvania.

Upon a reinspection of the property, on the day before the rescheduled settlement, complaint was made by the Traylors that certain fixtures — a first floor bathtub, first floor heating unit, and kitchen cabinets — had been removed from the premises. Grafton denied that a downstairs bathtub had ever been in the premises, that the heating unit, loaned by a neighbor, had been returned, and that the kitchen cabinets had been re-erected. Mrs. Traylor testified that when her husband indicated he would not settle "without the stove or range being replaced," Grafton, with some irritation, forcefully declared that you can "forget the whole thing"; this was denied by Grafton.

When the Traylors reported the missing fixtures to Deshner he advised them that he would "take care of everything" at the settlement, it being understood that under an assignment made by the Traylors to him he would appear at the settlement and the entire matter would be negotiated by him. An unsigned, undated assignment of contract to Deshner was offered in evidence with testimony that Deshner had the executed original. There was similarly offered in evidence an unsigned, undated assignment from the Traylors to the Eilers which had been prepared in the office of the attorney scheduled to conduct the settlement.

When the new settlement date arrived neither Deshner nor the Traylors appeared, although the Graftons and Eppley were on hand.

Although there was testimony that Deshner had been negotiating with the Eilers and the funds used to complete the settlement were to be received from the sale by Eilers of another property, such collateral transaction was not apparently consummated.

The Graftons instituted suit against the Traylors in the

Circuit Court for Harford County and asserted liquidated damages in the amount of $4,000 ($4,500 less the $500 down payment). When, pursuant to Maryland Rule 315, the Traylors impleaded Deshner, their theretofore undisclosed principal, as a third-party defendant, the Graftons, in an amended declaration, set forth three "alternative" causes of action: in Count I they sued the Traylors; in Count II they sued both the Traylors, as agents, and Deshner, as principal, alleging a joint and several liability; under Count III Deshner alone was sued as the principal of the Traylors.

The Graftons in their declaration gave notice of their intention to rely upon the law of Pennsylvania in accordance with the provisions of Maryland Code (1957, 1965 Repl. Vol.) Art. 35, § 50 (now Maryland Code (1974), Courts and Judicial Proceedings Article § 10-504), and at a pretrial conference the Circuit Court (Dyer, J.) ruled that the law of Pennsylvania controlled on the issue of liquidated damages and granted the motion of the Graftons to restrict the testimony to preclude any evidence that the property had been subsequently sold with no resultant actual damages to the Graftons. During the trial of the case the trial court (Proctor, J.) upon a proffer made by the Traylors to show that no actual damages had been sustained by the Graftons ruled as a matter of law that the claimed liquidated damages were not a penalty.

The case was submitted to the jury under each of the three counts on behalf of the Graftons, as well as upon the third-party claim by the Traylors against Deshner, but the court instructed the jury only under Counts I and III and the third-party claim. After counsel had noted their respective exceptions to the court's instructions, and immediately prior to argument, counsel for the Graftons, "in order to attempt to make an election, pursuant to Maryland Rule 320," moved "to amend their declaration to strike Count III against Earl Deshner." Although Judge Proctor recognized that under the rule an "amendment" could be made at any time, in his discretion he denied the motion.

During the course of its deliberations the jury addressed a written question to the trial court as follows:

"If we find that the verdict is for the Plaintiff, and further find that the Traylors are responsible to Plaintiff, and then find for the Traylors against Deshner in the third-party claim, does it make Deshner fully responsible for the penalty?"

Following discussion with counsel in chambers the court in response to the inquiry replied as follows:

"In legal theory, yes. Under such verdicts, Plaintiffs could proceed to try and collect from the Traylors. If successful, Traylors could then proceed to try and collect from Deshner. Under such verdict, Plaintiffs could not proceed to try and collect directly from Deshner."

The Traylors excepted to the entire reply by the trial court, contending that the response should have been a simple "No"; the Graftons filed exception to the last sentence of the court's supplemental instruction.

After approximately an additional hour of deliberation the jury addressed another question to the court. This question read:

"If we rule Plaintiff (Grafton) against Traylor and Deshner, with Traylors as agents to principal (Deshner) is the third party suit dissolved, or can we rule Traylor against Deshner in the third party suit?"

The Court, in consultation with counsel, advised of the answer he proposed to submit. Counsel for the Graftons excepted on the ground that the proposed answer was contrary to Pennsylvania law. Counsel for the Traylors excepted to the proposed reply on the ground that "the simple answer" should be: that if the verdict is that the Traylors were acting as agents for Deshner as principal and so find a verdict against Deshner, then, in such event, the third-party suit would be "dissolved." Overruling the exceptions, the court's written response to the jury, as proposed, read as follows:

"You cannot bring in a verdict in favor of

Plaintiffs against both Traylors and Deshner. However, if you find Traylors acted as agents for Deshner, you can either (1) bring in verdict under Count 1 against Traylors, and verdict under the third party claim against Deshner; or (2) bring in verdict against Deshner under Count 3, in which event the third party claim would be dissolved."

Judge Proctor then, sua sponte, directed the court reporter to prepare three questions for submission to the jury which he believed "will resolve the whole thing." Those questions were as follows:

"1. Do you find there was a subsisting contract on July 16th, 1968? Answer yes or no.
2. Do you find that the contract was made by Traylors as agents for Deshner? Answer yes or no.
3. Do you find that that contract was made by Traylors on their own behalf, and not as agents for Deshner? Answer yes or no."

Before the questions were typed the jury "knocked with verdict"; the foreman announced that "We considered the contract valid, and we ruled in favor of the Plaintiffs, the Graftons, and against the Traylors. Insofar as the third party suit we ruled — as we considered the Traylors the Plaintiffs — we ruled for the Traylors against Earl Deshner." Judge Proctor then directed the clerk to enter a verdict for the plaintiffs on the first count and verdict for the plaintiffs in the third-party claim and a verdict for defendants "on the third count." When he directed the clerk to have the jury hearken to their verdict, counsel for the Traylors moved for a poll of the jury. Judge Proctor himself undertook the poll and stated:

"The verdict as stated by the foreman is verdict for the Plaintiffs, the Graftons against Traylors under the first count; verdict for Defendant in the action of Graftons against Deshner under the third count; and verdict for Plaintiffs Traylors against

Deshner in the third-party claim. That's the way the foreman has stated the verdict, and I'll ask each of them if that is their verdict."

Then the following dialogue took place between the trial court and the jury after the foreman requested the court "to mention the second count":

"THE COURT: Well, it's really technically the third count of the declaration. I told you in the charge you could return, as you have done, a verdict against the Traylors under the first count and third-party claim against Deshner; but I told you that you could not return a verdict against the Traylors in the first count and Deshner under the third count, so that's verdict for the Defendants. Is that what your understanding was, because I can't give you the verdict.

JURY FOREMAN: We looked at the third-party as the Traylors against Deshner.

THE COURT: That's right; that's the third-party claim.

JURY FOREMAN: Right; and we ruled for the Traylors.

THE COURT: That's correct, Traylors. And in the original suit there was Count 1 which is the suit of Graftons against Traylors, and you returned a verdict there in favor of Graftons against the Traylors.

JURY FOREMAN: Yes, sir.

THE COURT: Also in the original suit was Count 3, which was the suit of the Graftons against Deshner. Now, you didn't actually announce a verdict on that.

JURY FOREMAN: That's right.

THE COURT: And you'll have to return a verdict on that. I have instructed you in the charge that you couldn't bring in a verdict in favor of the Plaintiffs on both of these counts.

JURY FOREMAN: Right, so we ruled for the Plaintiffs against Traylors, and not Deshner.

THE COURT: Right. That still doesn't clear it, because you have to then return automatically under my charge a verdict in favor of Defendant Deshner in the third count of the original suit. You still have your verdict of Traylors against Deshner in the third-party claim. I want to be sure that's what your verdict is.

JURY FOREMAN: Do you want us to retire for a minute?

THE COURT: I have dictated three questions which counsel I believe have agreed — which are very simple questions based upon your announced verdicts — and I think if I submit those questions to you, and you answer those questions, you wouldn't have to worry about it and that would resolve that.

FOREMAN: Yes, sir.

THE COURT: All right; we'll recess a minute and give you those three questions."

After retiring the jury returned and answered issues numbers one and two affirmatively; in accordance with the court's instruction no answer was required to issue number three.

Following these responses by the jury the trial court stated that the entry of verdicts would be held *sub curia* in order to permit counsel to submit memoranda concerning whether or not the court had improperly removed from consideration by the jury the claim of the Graftons asserted under Count II, against both the Traylors and Deshner, alleging a joint and several liability. The Traylors noted their exception to the procedure instituted by the court since it had not been agreed upon at the time of submission of the case to the jury, nor before argument and deliberations that the case would be decided upon issues submitted, and that the issues submitted were inconsistent with the charge given the jury.

In the memoranda from counsel the Graftons *then* requested the court to permit them "to strike by amendment Count 2 *and* Count 3 of their declaration" and requested the entry of a verdict against the Traylors for $4,000; Judge Proctor in an opinion filed on July 3, 1973, concluded that he had erroneously refused the plaintiff's election to dismiss Count II (charging the Traylors and Deshner to be jointly and severally liable), *and* Count III (against Deshner alone as a principal). Relying upon the holdings in *Hospelhorn v. Poe*, 174 Md. 242, 257-62, 198 A. 582, 589-91 (1938), the court directed the clerk to enter that Counts II and III "were voluntarily dismissed by the plaintiffs" and upon the jury's responses to the issues, a verdict was to be entered under Count I in favor of the plaintiffs against the Traylors in the amount of $4,000, and that under the third-party claim a verdict was to be entered against Deshner in favor of the Traylors in the same amount. Judgments nisi were directed to be entered upon those verdicts. A motion for a new trial, apparently was denied.

In their appeal the Traylors here contend (1) that there was error in determining that the law of Pennsylvania rather than the law of the forum governed the provision in the contract as to damages, (2) that it was error not to permit evidence of a want of actual damages and the fact that the property was later sold at a price exceeding the contract price, (3) that the instructions to the jury in response to the written question from the jury were erroneous, (4) that it was error to submit issues to the jury after its verdict was announced and after a request that the jury be polled, (5) that the court erred in ruling as a matter of law that although certain items had been removed from the property the plaintiffs were prepared to substantially perform their obligations under the contract, and (6) that the court erroneously refused a requested instruction that the obtaining of the specified mortgage financing was a condition precedent to liability under the contract.[2]

---

2. The contentions are not arranged in the order in which they were asserted by the appellants, but are in the order in which we shall discuss them.

### *Damages*

The Traylors argue that the law of the forum governs the remedy, that the liquidated damage clause in the contract was in fact a "penalty" and as such was unenforceable.

While it is true that the remedy for breach of contract is regulated by the law of the forum, *Mandru v. Ashby*, 108 Md. 693, 695, 71 A. 312, 313 (1908), it is a general rule of comity that the law of the place of contracting determines the validity and effect of a contract with respect to the nature and extent of the duty owed by a party who becomes bound to perform. *Mackubin v. Curtiss-Wright Corp.*, 190 Md. 52, 57, 57 A. 2d 318, 321 (1948); *Union Trust Co. v. Knabe*, 122 Md. 584, 89 A. 1106 (1914); *Mandru v. Ashby, supra.* As was stated in *Union Trust Co. v. Knabe, supra*: " 'the *lex loci contractus* controls the nature, construction and validity of the contract. Courts will always look to the *lex loci,* to give construction to an instrument, and will impart to it validity, according to those laws, unless it would be dangerous, against public policy, or of immoral tendency to enforce it here.' " 122 Md. at 608, 89 A. at 1115.

Contracts relating to the sale of realty are generally governed by the law of the jurisdiction in which the property is located. *See* Restatement (Second) of Conflict of Laws § 189, comment *b* (1971), noting that this includes enforceability of a liquidated damage clause. *See also* 15A C.J.S. *Conflict of Laws* § 19(2) (1967).

In *Latrobe v. Winans*, 89 Md. 636, 43 A. 829 (1899), our predecessors held that where an offer to purchase land situated in this state was made by letter posted in England and the acceptance occurred here the contract was entered into in Maryland, the *lex loci* applied and the agreement was to be construed under Maryland law.

Most states are said to apply the usual rules of contracts concerning their nature, construction and validity when a conflict of laws problem arises under a land contract. *See* Note, *Choice of Law Governing Land Transactions*, 111 U. Pa. L. Rev. 482 at 486 (1963). In H. Goodrich, Conflict of Laws § 91, at 259 (3d ed. 1949), the general rule is stated to

be that whether an agreement for liquidated damages is valid or not depends upon the law of the place of contracting unless it is against the public policy of the forum to enforce such a provision.

We have defined "liquidated damage" as a " 'specific sum of money ... expressly stipulated by the parties to a ... contract as the amount of damages to be recovered by either party for a breach of the agreement by the other.' " *See Massachusetts Indem. Life Ins. Co. v. Dresser*, 269 Md. 364, 368, 306 A. 2d 213, 216 (1973).

Both our decisions and those of Pennsylvania have held that a liquidated damage clause is within the substantive law of contracts, and — if not a "penalty" — is an enforceable provision as a sum agreed upon by the parties to be paid in the event of a breach, enforceable as any other provision or valid promise in the contract. *Massachusetts Indem. Life Ins. Co. v. Dresser, supra; John Cowan, Inc. v. Meyer*, 125 Md. 450, 94 A. 18 (1915); *Foster v. Hudson Valley Lumber Co.*, 37 F. Supp. 381 (D. Md. 1941); *Mathews v. Sharp*, 99 Pa. 560 (1882); *Streeper v. Williams*, 48 Pa. 450 (1865); *Bruno v. Pepperidge Farm, Inc.*, 256 F. Supp. 865 (E.D. Pa. 1966). *See also* 5 A. Corbin, *Contracts* § 1054, at 319 (1964).

The nomenclature used by the parties, although a circumstance, is not determinative in passing upon whether or not the payment of the designated sum is in fact a penalty. *See Mt. Airy Milling Co. v. Runkles*, 118 Md. 371, 376, 84 A. 533, 534 (1912). *In accord, Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205, 146 A. 2d 714 (1958); *Gross v. Exeter Machine Works, Inc.*, 277 Pa. 363, 121 A. 195 (1923). The decisive element is the intention of the parties — whether they intended that the sum be a penalty or an agreed-upon amount as damages in case of a breach and this is to be gleaned from the subject matter, the language of the contract and the circumstances surrounding its execution. *Siler v. Marshall*, 251 Md. 342, 247 A. 2d 385 (1968); *Macon v. Zeiler*, 233 Md. 160, 195 A. 2d 687 (1963). *In accord, Lackawanna Boiler & Grate Co. v. Lee Coal Storage Co.*, 290 Pa. 561, 139 A. 315 (1927); *City of York v. York Ry.*, 229 Pa. 236, 78 A. 128 (1910).

If the sum agreed upon is a reasonable forecast of the just and fair compensation for the harm that would result by a breach of the contract and the resultant injury is difficult to estimate accurately or actual damages could not be easily ascertained, such a clause has been held enforceable as liquidated damages. *Massachusetts Indem. Life Ins. Co. v. Dresser, supra; Goldman v. Connecticut Gen. Life Ins. Co.*, 251 Md. 575, 582, 248 A. 2d 154, 158 (1968); *Hammaker v. Schleigh*, 157 Md. 652, 667, 147 A. 790, 796 (1929); *Mt. Airy Milling Co. v. Runkles, supra; Willson v. Mayor & C.C. of Balto.*, 83 Md. 203, 34 A. 774 (1896). *See also* 5 S. Williston, Contracts § 778, at 694 (3d ed. 1961). The Pennsylvania decisions are in accord with these holdings. *See Mathews v. Sharp, supra; Streeper v. Williams, supra; Bruno v. Pepperidge Farm, Inc., supra.*

Where, however, the amount agreed upon and inserted in the agreement is shown to be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract, the amount specified removes it from the ambit of "liquidated damages." *Cowan v. Meyer, supra,* 125 Md. at 463, 94 A. at 21, quoting from *Baltimore Bridge Co. v. United Rys. & Elec. Co.*, 125 Md. 208, 214-15, 93 A. 420, 422 (1915).

In *Siler v. Marshall, supra,* where the contract for the sale of land at a purchase price of $916,905 provided for the forfeiture, as liquidated damages, of the deposit made thereunder in the amount of $25,000 (amounting to approximately 2.7% of the purchase price) in the event of a breach by the purchaser, this Court upheld the enforcement of the forfeiture clause and Chief Judge Hammond, writing for the Court, concerning the nature of liquidated damages stated as follows:

"As long ago as the case of *Geiger v. The Western Md. R.R. Co.*, 41 Md. 4, 15, our predecessors said:

' [W]here the parties have declared in clear and unambiguous terms that a certain sum shall be paid by way of compensation, upon a breach of the contract * * * the damages arising from the

breach of which are uncertain, and incapable of being ascertained by any fixed pecuniary standard, and especially where the contract provides that the sum so claimed shall be paid as *liquidated damages*, the sum so fixed and agreed upon will be considered as compensation for damages resulting from the breach and not a penalty.'

In *Cowan v. Meyer*, 125 Md. 450, 463, the Court adopted the language of Judge Pattison for the Court in *Baltimore Bridge Co. v. United Railways and Electric Co.*, 125 Md. 208, 214-215, that:

' "From the authorities given above, it may be stated as a settled rule of law, that where the parties, at or before the time of the execution of the contract, agree upon and name a sum therein to be paid as liquidated damages in lieu of anticipated damages which are in their nature uncertain and incapable of exact ascertainment, that the amount so named in the agreement will be regarded as liquidated damages and not as a penalty, unless the amount so agreed upon and inserted in the agreement be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract. And whether it is excessive or whether the damages are incapable of exact ascertainment should be determined from the subject-matter of the contract considered in the light of all the surrounding facts and circumstances connected therewith and known to the parties at the time of its execution." ' " 251 Md. at 346-47, 247 A. 2d at 387-88.

In *Streeper v. Williams, supra,* apparently the progenitor of the Pennsylvania decisions, the Supreme Court of Pennsylvania in holding that an agreement to forfeit a $500

deposit made under a contract to purchase a hotel for $14,000 was liquidated damages and not a penalty, stated:

"A sum expressly stipulated as liquidated damages will be relieved from, if it is obviously to secure payment of another sum capable of being compensated by interest. On the other hand, a sum denominated a penalty, or forfeiture, will be considered liquidated damages where it is fixed upon by the parties as the measure of the damages, because the nature of the case, the uncertainty of the proof, or the difficulties of reaching the damages by proof, have induced them to make the damages a subject of previous adjustment. In some cases the magnitude of the sum, and its proportion to the probable consequence of a breach, will cause it to be looked upon as minatory only. Upon the whole, the only general observation we can make is, that in each case we must look at the language of the contract, the intention of the parties as gathered from all its provisions, the subject of the contract and its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case. . . ." 48 Pa. at 454.

After pointing out the impediments, inconveniences and difficulties respectively faced by the seller and the buyer in searching for new homes, raising large sums of money and in many ways incurring losses and expenses which either might be unable to prove, and very difficult to be ascertained, the court further stated:

"Now, every one knows how difficult it is to reach and estimate the real losses men suffer from disappointment in their plans, and many of the subjects of loss cannot be put in evidence. An accurate account can scarcely be stated in dollars and cents, and yet but few, if asked to name a sum for a total abandonment of such a contract, would

be willing to take the risk much lower than at the sum stipulated here.

From all these circumstances, added to the intention deduced from the contract, we conclude that the parties fixed the sum stipulated, as the measure of the damages either would probably suffer from a total failure, and the compensation to be made therefor. . . ." 48 Pa. at 456.

Similarly, in *Mathews v. Sharp, supra,* the court sustained the forfeiture of a $500 deposit on the contract to purchase 14 acres of farm land at $450 an acre. Under the agreement between the parties if the purchaser defaulted his deposit was to be forfeited; if the seller reneged, in addition to the return of the deposit it was covenanted that he would similarly forfeit $500 to the purchaser. On the authority of *Streeper v. Williams,* the court held, in determining whether the sum named as a forfeiture for noncompliance was intended to be a penalty or liquidated damages, it was necessary "to look at the whole contract, its subject-matter, the ease or difficulty in measuring the breach in damages, and the magnitude of the stipulated sum, not only as compared with the value of the subject of the contract but in proportion to the probable consequences of the breach. . . ." 99 Pa. at 564.

In *Guardian Constr. Co. v. Dinkin,* 267 Md. 325, 297 A. 2d 242 (1972), we affirmed a judgment in the amount of $1,000 paid as a deposit on account of the purchase of a home exceeding $40,000 (approximately 2.5% of the purchase price), where the sellers declared the deposit forfeited when the purchasers failed to appear for settlement. In *Macon v. Zeiler, supra,* this Court affirmed a judgment in favor of the sellers in the amount of $1,000, the deposit made under a contract in the amount of $20,000 for a dwelling and a portion of a lot (amounting to 5% of the purchase price), where it was expressly provided in the contract that the deposit was to be forfeited if the buyers did not go through with their bargain. In *Alois v. Waldman,* 219 Md. 369, 149 A. 2d 406 (1959), although the contract was silent as to what disposition was to be made of a deposit in the amount of

$3,500 in the event of a default by the buyers under an agreement to purchase a residence and a tract of land for $35,000 (amounting to 10% of the purchase price), this Court held that "the retention of the deposit by the sellers could be supported on the theory that it was in the nature of liquidated damages rather than a penalty."

In *Kraft v. Michael,* 166 Pa. Super. 57, 70 A. 2d 424 (1950), on the authority of *Streeper v. Williams, supra,* it was held that the forfeiture of $1,600 made as a deposit on the purchase of a home for $16,000 (10% of the purchase price), was liquidated damages and not a penalty. The court, which cited Restatement of Contracts § 339 (1932), stated that, considering the language of the agreement, "we can come to no other conclusion than that the sum stipulated bore such a reasonable relation to the purchase price that the court below did not err in treating it as liquidated damages and not as a penalty." In *Tudesco v. Wilson,* 163 Pa. Super. 352, 60 A. 2d 388 (1948) *allocatur ref'd,* the agreement for the sale of real estate provided for the forfeiture of the down payment in the amount of $1,600 if the buyer defaulted in the purchase of premises for $16,000; the buyers, who made the deposit by check, had stopped payment. The court concluded that "[w]here, in an agreement of sale of real estate, there is a provision for liquidated damages and the vendee repudiates the agreement the vendor is entitled to the sum agreed upon as liquidated damages." (Citations omitted.) 163 Pa. Super. at 355, 60 A. 2d at 390.[3] *Compare,* however, *Ellis v. Roberts,* 98 Pa. Super. 49 (1930), where, in holding that a provision in a contract of sale for forfeiture of a deposit of $2,500 on account of a purchase price of $16,800 — or 15% of the purchase price — was so excessive and unreasonable as not to constitute "liquidated damages, but rather amounted to a penalty," the court stated:

"In the light of the amount of the purchase price, the knowledge which plaintiff had of defendants'

**3.** *See also* Luria v. Robbins, 223 Pa. Super. 456, 302 A. 2d 361 (1973), *allocatur ref'd* in which the court upheld the forfeiture of a down payment amounting to 10% of the purchase price of a shopping center.

financial condition, the relation which the sum agreed upon as liquidated damages bears to the purchase price and all the other circumstances, we are led to the conclusion that plaintiff intended the provision in the contract for liquidated damages to compel specific performance by defendants. This made it a provision for a penalty and precludes plaintiff from recovering more than just compensation for the breach of the contract by defendants, and requires us to open the judgment." 98 Pa. Super. at 60.

Conceding, *arguendo*, the applicability of the Pennsylvania decisions, the appellants urge that since they all involve the forfeiture of a deposit or "earnest money" in the hands of the vendor, the forfeiture of an amount equal to nine times the deposit must be considered as a "penalty." It is true that in the majority of the cases the sum agreed upon as liquidated damages was the amount of the deposit, but nowhere in any of our decisions, nor in those of Pennsylvania, is there any indication that the amount fixed as liquidated damages is limited by the amount of the deposit. In the absence of an agreement for forfeiture the amount of down payment has been generally considered to have been properly forfeited. *See Alois v. Waldman, supra; Macon v. Zeiler, supra; Quillen v. Kelley,* 216 Md. 396, 140 A. 2d 517 (1958). *See* as well *Roberts v. Roesch,* 306 Pa. 435, 159 A. 870 (1932); *Sanders v. Brock,* 230 Pa. 609, 79 A. 772 (1911); *Luria v. Robbins,* 223 Pa. Super. 456, 302 A. 2d 361 (1973) *allocatur ref'd.* When an amount specifically agreed upon is designated as the sum to be collected upon the other's default it makes no difference what down payment or deposit may have been made and the sum agreed upon is enforceable as liquidated damages so long as it meets all the necessary criteria.

Under both our decisions and those of Pennsylvania the determination of whether a particular clause in a contract is to be construed as providing for liquidated damages, or as a penalty, depends on the facts and circumstances in each case and ordinarily is a question of law for the court. *H. J.*

*McGrath Co. v. Wisner,* 189 Md. 260, 264, 55 A. 2d 793, 795 (1947); *Hammaker v. Schleigh,* 157 Md. at 667, 147 A. at 796; *March v. Allabough,* 103 Pa. 335 (1883); *Laughlin v. Baltalden, Inc.,* 191 Pa. Super. 611, 159 A. 2d 26 (1960).

The reasonableness of the amount fixed as liquidated damages is to be determined from the standpoint of the parties at the time the contract was made. *Hammaker v. Schleigh, supra; Baltimore Bridge Co. v. United Rys. & Elec. Co.,* 125 Md. 208, 93 A. 420 (1915). Similarly, whether damages are difficult of ascertainment is to be determined from the status of the parties when the contract was entered into, not when it was broken. *H. J. McGrath Co. v. Wisner, supra.*

The damage provision in the contract was available upon a failure to perform to both the Graftons and the Traylors. When it is considered that the Graftons obligated themselves under the contract to the payment of a real estate commission of $2,700 to Eppley and in reliance upon its performance conducted a public auction of their livestock and farm equipment and moved to another dwelling they purchased, and it is further considered that Mrs. Traylor was a realty salesperson, and the Traylors had agreed to acquire the total acreage for Deshner and to move their residence from Harford County to Pennsylvania, it cannot be said that the agreement to pay an amount equal to ten percent of the sale price was grossly excessive and out of all proportion to the damages which might reasonably have been expected — on the part of the vendors as well as the vendees — resulting from a failure to perform. *See Alois v. Waldman, supra; Kraft v. Michael, supra; Tudesco v. Wilson, supra;* and *Luria v. Robbins, supra* — each sustaining as liquidated damages an amount equal to ten percent of the selling price. It is apparent that at the time of the execution of the contract damages to either of the parties which might arise from its breach were uncertain and incapable of exact ascertainment. Considering the nature of the agreement and all the facts and circumstances surrounding the parties at the time of the execution of the contract it seems clear that they mutually intended to

liquidate the agreed upon damages in advance. Under both the *lex fori* and the *lex loci contractus* the subject clause must be construed to provide for the payment of liquidated damages — and not a penalty.

Since the land which was the subject matter of the contract was situate in Pennsylvania, since each and every act in connection with its negotiation and execution occurred in that state and since counsel for the Graftons gave notice of their intention to rely upon the law of Pennsylvania,[4] we conclude that both Judge Dyer and Judge Proctor correctly ruled that the law of Pennsylvania was applicable and correctly construed it as providing for the payment of liquidated damages.

This construction of the contract clause eliminates the question of actual damages resulting from a failure or neglect to perform and the issue of actual damages — or a want of them — becomes immaterial since the parties became bound by their agreement. *Roberts v. Roesch, supra; Sanders v. Brock, supra; Kelso v. Reid,* 145 Pa. 606, 23 A. 323 (1892); *Kraft v. Michael, supra.* The decisions of this Court are in accord. *John Cowan, Inc. v. Meyer, supra. See also Siler v. Marshall, supra; Macon v. Zeiler, supra;* and *Alois v. Waldman, supra.*

The same contention here raised by the appellants was asserted and rejected in *Kraft v. Michael, supra,* where the Pennsylvania court stated:

> "The averment that the property was later sold for more than the amount that appellants had agreed to pay for it would not be proper ground for opening the judgment, assuming it to be a fact. The same point was squarely raised and met in *Sanders v. Brock,* 230 Pa. 609, 79 A. 772 [1911]." 166 Pa. Super. at 60-61, 70 A. 2d at 426.

In *Cowan, supra,* our predecessors, in holding that after a breach of a contract in which there is a provision for

---

4. *See* Parkside Terrace Apts. v. Lindner, 252 Md. 271, 249 A. 2d 717 (1969).

liquidated damages, the actual damages, whether less or more than the stipulated amount, became immaterial, since the parties are bound by their stipulation, stated:

"[T]he effect of the clause we are considering is to substitute the amount agreed upon as liquidated damages for the *actual* damages resulting from the breach, and, as said by Mr. Brantly in his excellent work on *Contracts*, 'the party who failed to perform the contract will not be heard to say that the other party has not suffered any damages from the breach, or that his loss did not equal the sum named. The very object of the clause is to prevent such a controversy.' *Brantly on Contracts* (2nd Ed.), section 163; *Willson v. Baltimore City*, 83 Md. 203; *Baltimore Bridge Company v. United Railways, etc., Company, supra.*" 125 Md. at 465, 94 A. at 22.

The appellants reliance upon *Wade v. Lake County Title Co.*, 6 Cal.App.3d 824, 86 Cal. Rptr. 182 (1970); *Haas v. Crisp Realty Co.*, 65 So. 2d 765 (Fla. 1953); *Paffile v. Sherman*, 84 Idaho 63, 368 P. 2d 434 (1962); and *National Co-op Refinery Ass'n v. Northern Ordnance, Inc.*, 238 F. 2d 803 (10th Cir. 1956), in urging that evidence concerning actual damages should have been allowed, is misplaced. In each of the cases the amount designated as liquidated damages appeared to be a penalty. In *Wade* the forfeiture of $15,000 was held to be a penalty in light of a California statute fixing the standard for computing damages in land contracts and forfeitures of down payments; in *Haas* the case was remanded to determine whether the retention of an amount approximating thirty-eight percent of the purchase price of a new home was "shocking to the conscience." Similarly, *Paffile* ordered a remand to determine whether an amount retained by the sellers as a forfeiture amounting to approximately eighteen percent of the purchase price was unconscionable in relation to the actual damages occasioned by the breach; in *National Co-op Refinery Ass'n* the court, applying Kansas law, held that the amount stipulated for forfeiture — in the case of even an immaterial breach — bore no reasonable relationship to the actual damages which

might be suffered. In none of the cases were there present the prerequisites necessary for an enforceable liquidated damages provision and thus the cases are clearly distinguishable from the rule followed under both our decisions and those of Pennsylvania.

We conclude that the pretrial ruling by Judge Dyer, restricting the testimony so as to preclude any evidence that the property had been subsequently sold by the Graftons with no resultant damage, and the denial by Judge Proctor of the proffer made by the Traylors to show that the Graftons had sustained no actual damages, were correct as a matter of law.

### Instructions, Issues and Verdicts

At no time while Deshner was orchestrating the Traylors' actions and counseling their negotiations did the Graftons have any notice that the Traylors were acting in his behalf and he was thus, in accord with the definition in Restatement (Second) of Agency § 4 (3) (1958), an "undisclosed principal." *See Crosse v. Callis,* 263 Md. 65, 72-73, 282 A. 2d 86, 90 (1971). His true status as the principal became revealed only when the Traylors filed their third-party action against him under Maryland Rule 315. The Graftons then filed an amended declaration continuing their claim against the Traylors (Count I) and added counts charging a joint and several liability against both the Traylors and Deshner (Count II) and against Deshner alone, as the principal for the Traylors (Count III).

In the trial court's dialogue with counsel concerning the respective motions for directed verdict made by each, Judge Proctor, after referring to *Hospelhorn v. Poe,* 174 Md. 242 [198 A. 582 (1938)] as authority for denying the motion on behalf of Deshner, stated:

> "Unless Attorneys for the Plaintiffs produce a Pennsylvania case which holds that there is joint liability so far as the agent for an undisclosed principal, and his principal are concerned, the Court will direct a verdict as to the *second count* of the amended Declaration.

> In the event that Plaintiffs produce such a Pennsylvania case, then the Court will direct a verdict as to the *third count* of the amended Declaration."

Upon a resumption of proceedings — on the following morning — at the conclusion of the trial court's discussion with counsel about instructions to be given the jury, counsel for the Graftons directed the court's attention to the holdings of the Pennsylvania Supreme Court in *Joseph Melnick Bldg. & Loan Ass'n v. Melnick* [361 Pa. 328, 64 A. 2d 773 (1949)], that "Under the Pennsylvania Rule, the third person may proceed against either the agent or the undisclosed principal, or both, for the liability is joint and several." Notwithstanding this citation and quote from "a Pennsylvania case," the transcript — as well as the docket entries — fails to disclose that any directed verdict was entered — either upon the second or third counts.

In *Hospelhorn v. Poe, supra,* cited by the trial court, our predecessors held, (a) that where an agent of an undisclosed principal makes a contract in his own name, the third party, upon discovery of the principal, may enforce the contract against either the principal or the agent and may simultaneously bring an action separately against the principal and the agent, but may have only one satisfaction; (b) that after he has elected whom to sue and has sued either the agent or the principal to final judgment he cannot sue the other; (c) that he cannot recover against both, and if he elects to hold the agent, the principal is discharged, while if he elects to hold the principal the agent's liability is ended; and (d) that unless the principal and the agent are both joined in the action he may be required to make an election before it is certain that he has two alternative remedies in reference to which an election was necessary.

Judge Parke, writing for the Court, stated:

> "The liability of the agent, in those instances in which he promises in his own name, although really for an undisclosed principal, is based upon the fact that the treaty between the contracting parties is

made upon the single credit and faith of the agent, because of his choosing not to reveal his principal. In such circumstances, the other contracting party *has the right to hold the agent individually bound or to elect between the agent and the principal, when the latter is disclosed* (b). The promisee, upon discovery of the principal, may enforce the contract against *either* at his election, and it is held that he may simultaneously bring an action separately against the principal and the agent, but the promisee may have but one satisfaction (c). It is urged that the contractual relation of principal and agent does not admit of a joinder of the principal and agent in an action at law, since the promise is not joint nor several, but rather alternative. The obvious reply is that the fundamental things concerned are single. There is but one contract to be performed in respect of the one subject matter involved, and the principal and agent constitute but one party of the contract. (a) *Mechem on Agency* (2nd Ed.) sec. 1733. See *Rider v. Morrison,* 54 Md. 429, 443-445; *Bloede v. Bloede,* 84 Md. 129, 139-141, 34 A. 1127; *Kerr v. Urie,* 86 Md. 72, 37 A. 789; (b) *C.J.S., Agency,* sec. 248, pp. 175, 176; (c) 3 *C.J.S., Agency,* sec. 248, pp. 177, 178; *Estes v. Aaron,* 227 Mass. 96, 116 N. E. 392; *Gavin v. Durden Coleman Lumber Co.,* 229 Mass. 576, 118 N. E. 897.

In the words of Mechem: 'Whether the agent and the principal may be joined as defendants in the same action is a question involving a variety of considerations and leading to much difference of opinion. * * * It will suffice here to say that there is a large and constantly growing number of cases in which it is held that such a joinder is proper.' The learned author cites a number of cases in support of the quoted text. 1 *Mechem on Agency,* sec. 1487, n. 59, pp. 1103, 1104. In the course of a subsequent discussion of what will constitute an election by the third party after discovery of the principal has been

made, the author observes that 'the mere commencement of an action against an agent, although this act is often regarded as an election in other fields, is not here deemed to constitute a conclusive election as a matter of law, whatever may be its force as evidence of an election as a matter of fact. There is, moreover, as has been seen, authority for saying *that principal and agent may be simultaneously sued severally, and possibly even jointly.*' Section 1758, pp. 1336, 1337, 1759; *Curtis v. Williamson*, [1874] L.R. 10 Q.B., 57; *Priestly v. Firnie*, 1865, 3 H. & C., 977.

In *Williston's Wald's Pollock on Contracts* it is flatly stated: 'When it is said that he (the other party) has a right of election this means that he may sue either the principal or the agent or *may commence proceedings against both, but may only sue one of them to judgment*; and a judgment obtained against one, though unsatisfied, is a bar to an action against the other.' p. 116. See *Pollock on Contracts* (7th Ed.), p. 105.

The rule in Maryland is similarly stated in *Codd Company v. Parker*, 97 Md. 319, at page 325, 55 A. 623, 624: 'And the general principle appears to be established that where an agent contracts in his own name, without disclosing his interest, though in fact for the exclusive benefit of another person, who is afterwards discovered, the creditor may sue either, but after he has elected whom to sue, and has sued either the agent or principal to final judgment, he cannot after that sue the other, whether the first suit has been successful or not.'

Since the third party may simultaneously sue separately the agent and his undisclosed principal, after the latter's discovery, and is not held to have made an election to look to the one or the other, *until he takes a final judgment against the one he thus elects to hold to the exclusion of the other, there is no sound reason why the agent and*

*principal may not be sued jointly by the third party
. . . . The plaintiff in the joint action may therein
elect,* with equal, if not greater, facility, and with
more certainty and singleness of procedure and
record, *against which of the joined defendants he
would take his final judgement."* 174 Md. at 257-59,
198 A. at 590. (Emphasis supplied.)

He further stated in the opinion:

"If the third party contract with an agent for an
undisclosed principal, he may hold the agent or,
upon discovery, the principal, but the third party
*cannot recover from both.* If the third party elects
to hold the agent, the principal is discharged; and,
conversely, if he elects to hold the principal, the
liability of the agent is at an end. The existence of
the relation of principal and agent is a fact, and the
agency may be asserted and denied by the
immediate parties. Under such circumstances, full
knowledge of the facts which are material to the
third party's election is difficult of ascertainment,
and, *unless the principal and agent are joined in the
action, the third party would be required to make
an election before it was certain that he had two
alternative remedies* in reference to which an
election was necessary." 174 Md. at 261, 198 A. at
591. (Emphasis supplied.)

*See also Crosse v. Callis, supra;* and *Garfinkel v.
Schwartzman,* 253 Md. 710, 727-28, 254 A. 2d 667, 677 (1969).

Although there is a complete compatibility between our
holdings and those of the Pennsylvania courts concerning
the criteria for and the enforceability of "liquidated
damages," there is a clear divergence of our precedents with
the Pennsylvania cases concerning the liability of an agent
and undisclosed principal.

In *Joseph Melnick Bldg. & Loan Ass'n v. Melnick, supra,*
cited to the trial court, it was held that under Pennsylvania
law the liability of an agent or undisclosed principal, or

both, is joint and several. In reversing the action of a trial court which had held that a release by the appellant of the later disclosed principals for whom the appellee was acting as an agent effected the release of the agent-appellee, the court stated:

"Many jurisdictions in the United States have adopted the view that if, after learning of the existence of an undisclosed principal, the third party obtains a judgment against the agent, *there has been an election* and the principal is discharged. See: Restatement, Agency, Sec. 210; Williston on Contracts, Vol. I, Revised Edition, Sec. 289. Pennsylvania, however, has not adopted this view. . . . This Court has decided that the third party has the option to proceed against either the agent or his principal, or both, *but is entitled only to one satisfaction.* This principle was established in the leading case of *Beymer v. Bonsall,* 79 Pa. 298, which has been consistently followed. See: *Aber to use v. Pennsylvania Co. for Insurances on Lives, etc.,* 269 Pa. 384, 112 A. 444; *Pennsylvania Company, etc., et al. v. Clark et al.,* 340 Pa. 433, 447, 448, 18 A.2d 807; *Robinson v. Wallace,* 65 Pa. Superior Ct. 54, 55; *Horwath et al. v. Simon,* 95 Pa. Superior Ct. 410, 413; *Descalzi et al. v. North American Fruit Exchange,* 96 Pa. Superior Ct. 293, 296; *Nusbaum v. Warwick Hotel Company,* 112 Pa. Superior Ct. 277, 284, 170 A. 388; *Brennan et al. v. Huber,* 112 Pa. Superior Ct. 299, 304, 171 A. 122. Cf. *Pittsburgh Terminal Coal Corporation v. Williams,* 70 F.2d 65 (C.C.A. 3). Professor Williston says: 'What has been termed the Pennsylvania view permits pursuit of both agent and principal until the claim is satisfied.' Williston on Contracts, Vol. I, Revised Edition, Sec. 289, p. 855. See also: Professor Merrill's Article, 'Election Between Agent and Undisclosed Principal: Shall We Follow the Restatement?' 12 Nebraska Law Bulletin 100.

If under the Pennsylvania rule, the third person

*may* proceed against either the agent or the undisclosed principal or both, the liability is *joint and several*. See: *Williamson v. O'Dwyer & Ahern Co.*, 127 Ark. 530; 192 S.W. 899, 900; *Lincoln Joint Stock Land Bank of Lincoln v. Bexten et al.* (Neb.), 250 N.W. 84, 88; *Clarry Lumber Co., Inc., v. O'Brien*, 117 Misc.Rep. 319; 191 N.Y.S. 182. . . ." 361 Pa. at 334-35, 64 A.2d at 776-77.

Notwithstanding that the case was tried, and the rulings made, under the law of Pennsylvania, the trial judge instructed the jury under our holdings in *Hospelhorn v. Poe, supra*. Concerning the status of Deshner, the court instructed the jury:

"[I]f there is an agency here, the agent is liable, but also the principal is liable. *Our Court of Appeals* has also said in such a case the Plaintiffs may proceed against both the agent and the undisclosed principal at the same time in the same suit, in different counts in the same suit, which is what was done by the Plaintiffs. There can, however, be only one recovery on behalf of the Plaintiffs; although they have the right to sue both, the recovery is limited to one." (Emphasis supplied.)

This instruction was supplemented by the jury being advised that if they found:

"[T]hat the contract was not voided by the parties [5] and that the Traylors were acting as agents for Deshner, then [they had] a choice; you may return a verdict for the Plaintiffs against the Traylors, in which event under count 3 you would return a verdict in favor of the Defendant. Now the verdict against the Traylors would be in the amount of $4,000 — or you may return a verdict for the

---

5. The jury had been instructed concerning whether or not the contract had been "voided" predicated upon the testimony that Mr. Grafton, upon protestation from the Traylors about missing fixtures, had stated you can "forget the whole thing."

Defendants, in which event under count 3 — the suit against Deshner — you would return a verdict in favor of the Plaintiff against the Defendant in the amount of $4,000."

Although under the holdings in *Joseph Melnick Bldg. & Loan Ass'n v. Melnick, supra,* the jury would have been entitled to return a verdict under Count II — holding the Traylors and Deshner jointly and severally liable — no reference whatsoever was made in the court's instructions to Count II, or to such joint and several liability. Indeed, in its instructions the trial court advised the jury that Counts I and III were "the 'key' to the decision."

In denying the Graftons exceptions to the court's instruction in which counsel pointed out that under Pennsylvania law "both the undisclosed principal and the agent can be held liable jointly," and proffered — if permitted to do so — an election "to pursue the Traylors individually — and as agents for the undisclosed principal," Judge Proctor stated: "The court's answer to that is that the court *followed the Maryland law.*" (Emphasis supplied.)

The Traylors filed no exception to the instructions in their lack of accord with Pennsylvania law, but limited their exceptions to other grounds.[6]

It was only upon the conclusion of all exceptions to the instructions that counsel for the Graftons moved "to amend their declaration to strike Count III against Earl Deshner" — possibly a motion for voluntary dismissal or for *non pros,* under Maryland Rule 541, and ostensibly made as an "election" under *Hospelhorn v. Poe.*

The failure to instruct the jury, under the law of

---

6. The Traylors excepted on the ground that there was a knowledge of the existence of the principal on the part of the attorney for the Graftons and that by preparation of a deed from the Graftons to Eilers, as well as an assignment of the contract, a new contract came into existence with a revealed principal. They also excepted to the failure of the trial court to grant their proferred instructions concerning the condition precedent to obtain a mortgage, concerning a breach of the contract by the removal of certain fixtures and the failure to instruct that if the sum of $4,500 was an "unconscionable amount and greatly disproportionate to the injury," the amount was a "penalty."

Pennsylvania, that an agent and undisclosed principal could be held jointly and severally liable was emphasized when the trial court, in response to the first question submitted from the jury — and to which answer the Traylors excepted — instructed that a verdict against the Traylors (under Count I) and against Deshner (in the third-party claim) "in legal theory" made Deshner fully responsible and that under such a verdict the Graftons could not collect directly from Deshner. The error was compounded when, in response to the jury's second written inquiry, the trial court instructed them — to which the Traylors again seasonably excepted — that they "*cannot* bring in a verdict in favor of Plaintiffs against both Traylors and Deshner." That the jury was indeed "confused" — as the appellants here contend — is evidenced by the request of the jury foreman, when the jury undertook to announce a verdict, that the trial court "mention the second count," and the court, having failed to instruct under that count, told the jury that "it's [the second count] really technically the third count of the Declaration."

Since the jury found, as announced by its verdicts — and by its affirmative response to Issue No. 2 — that the Traylors, at the time of the execution of the contract, were acting as the agents for their "undisclosed principal," Deshner, it was error to have instructed that a verdict against Deshner under the third-party claim made him "fully responsible" and it was error to have instructed, contrary to the law of Pennsylvania, that they could not return a verdict against both the Traylors and Deshner jointly.

Indeed, Judge Proctor, upon receipt of the answers to the issues and in advising the jury that he would later enter a verdict, stated that during their deliberation counsel had been "pressing upon the court" its failure to permit the jury to consider the *second* count of the declaration, "which was a count against both Traylors and Deshner, which was apparently *the way you wanted to return the verdict.*" (Emphasis supplied.)

In challenging the propriety of submitting issues to the jury after the jury had announced a verdict and after a

request for a poll had been granted, appellants assert that the court compounded its error in connection with the answer given to the first question asked by the jury, that this resulted only "in further confusion" and denied them "procedural due process of law."

A jury may correct or change its verdict at any time before the verdict is recorded. In *Ager v. Balto. Transit Co.,* 213 Md. 414, 132 A. 2d 469 (1957), the jury, after deliberating for some time informed the court that they were unable to agree upon a verdict and were thereupon discharged. Before any of the jurors had left the jury box the clerk of the court, having seen or heard some indication from the jury, stated that they "have changed their minds now." The trial court directed that they return to the jury room and deliberate further, and following this they returned a verdict for the defendants. In holding this procedure proper, Judge Prescott (later Chief Judge), who delivered the opinion of the Court, stated:

> "This Court at an early date, 1827, held that a verdict may be varied from by the jury, at any time before the verdict is recorded. *Edelen v. Thompson,* 2 Harris & G. 31, 34. Cf. *Bronstein v. Amer. Ice Co.,* 119 Md. 132, 138, 86 A. 131. But, ordinarily a jury should not be permitted to amend its verdict after it has been recorded and the jury dismissed. *Harris v. Hipsley,* 122 Md. 418, 89 A. 852; *Gaither v. Wilmer,* 71 Md. 361, 18 A. 590; *Williams v. New York, etc.,* 153 Md. 102, 107, 137 A. 506. Of course, in this case there was no verdict at the time the jury was directed to resume deliberation, and the proposed discharge of the jury was never recorded. . . ." 213 Md. at 419, 132 A. 2d at 471-72.

Here the verdict as orally announced by the jury was incomplete in failing to announce any finding on Count III, and its recordation was interrupted by the requested poll. It was at this juncture that Judge Proctor submitted the issues.

Although Maryland Rule 560 permits the court to require

a jury to return "a special verdict in the form of a special written finding upon each issue of fact," and provides, upon the return of such verdict, for the entry of "an appropriate judgment nisi," the Rule is silent as to whether or not such issues may be submitted to the jury, during the course of their deliberation, after they have been instructed in connection with the rendition of a general verdict, after the case has been argued on the basis of a general verdict and after the jury has attempted, although imprecisely and with some ambiguity, to announce its verdict.

In *Rosenberg v. Manager, U.C. & J.F. Bd.*, 260 Md. 164, 271 A. 2d 692 (1970), this Court held that when, under Maryland Code (1957, 1967 Repl. Vol.) Art. 66½, § 168, it became necessary for the trier of fact to consider whether an accident was caused by the operator of an unidentified vehicle rather than a named defendant, it was appropriate to utilize a special verdict as permitted by Maryland Rule 560, and in setting forth the procedure which might be followed Judge Digges, for the Court, stated:

> "In either a jury or nonjury trial the court may utilize a special verdict as permitted by Maryland Rule 560. In his discretion the judge may submit special issues to the trier of fact in any of the following ways: 1) as one of several issues of fact for determination in the original case, 2) as a single issue to be specifically answered at the time the verdict in the original case is announced, or 3) as a separate issue for determination after the verdict in the original case, but before the jury is discharged — if the case is being considered by a jury. . . ." 260 Md. at 170, 271 A. 2d at 695.

Judge Proctor, obviously sensing the confusion of the jury and the incompleteness of the verdict announced by the foreman, was of the opinion that the factual answers to the succinct issues he prepared would help free the jury from the morass in which it was mired and the issues can be categorized as "separate issue[s] for determination after the verdict in the original case."

The appellees respond to the Traylors' contention by

arguing that no exception to the formulation of the issues or their submission was timely asserted in compliance with Rule 560 b. Although the record fails to disclose whether the appellants were actually given an opportunity to except either to issues the court proposed to submit to the jury or to their conciseness or applicability, under *Kruszewski v. Holz*, 265 Md. 434, 290 A. 2d 534 (1972), or to offer other issues, *See Continental Casualty Co. v. Pfeifer*, 246 Md. 628, 639, 229 A. 2d 422, 427 (1967), and although we note that the exception was filed after the jury had announced their responses, the question may be resolved on another ground. While we do not place our *imprimatur* upon the precedure used, we see no procedural prejudice to the Traylors inasmuch as the jury, by their affirmative answer to Issue No. 2, found — as the Traylors had contended throughout — that they were acting as the agents for Deshner. This response under Pennsylvania law effected a resultant joint liability of the Traylors and Deshner, their "undisclosed principal," as we later point out.

The error in failing to apply the substantive law of Pennsylvania was brought to consummation when, six days after the return of the verdicts, the trial court concluded that it had erroneously refused to permit counsel for the plaintiffs, before the charge to the jury, "to dismiss Count II of the declaration (which charged both the Traylors and Deshner) *and Count III* of the declaration (which charged Deshner as principal)" and had thus refused to permit them to make the election mandated under the holdings in *Hospelhorn v. Poe*. The record discloses that the election attempted by the plaintiffs during trial was to "strike by amendment" only Count III; it was in their post-trial memorandum that the Graftons for the first time moved "to strike by amendment" Count II. Judge Proctor, apparently concluding that this was in accord with the election required under *Hospelhorn v. Poe*, thus then permitted the dismissal of Counts II and III and entered verdicts in favor of the Graftons against the Traylors under Count I in the amount of $4,000 and in favor of the Traylors against Deshner, the third-party defendant, in the same amount. The clerk, upon

those verdicts, was directed to enter the respective judgments nisi.

The appellants' reliance upon *Gaither v. Wilmer*, 71 Md. 361 (1889), in asserting that the trial court "usurped" the function of the jury, when it fixed the damages, is inappropriate. In that case, in an action upon two promissory notes and accounts stated between the parties, as well as upon pleas of set-off, the jury announced a verdict "for the plaintiff" but failed to specify any amount. After its recordation and the separation of the jury the trial court added the words, "for the sum of $5,378.72." Our predecessors there found that such a verdict was fatally defective and that in such an action upon a contract the verdict, if for the plaintiff, must be in an amount specified by the jury. Since the action here was brought for liquidated damages and the clause providing for the payment thereof was found to be enforceable, the jury was required to assess as damages the amount agreed upon and could not return a verdict for more or less. *Smithson v. United States Tel. Co.*, 29 Md. 162 (1868). *See also Cowan v. Meyer, supra.*

The trial court possessed the power to correct a verdict which may be defective in form but which clearly and definitely expresses the intention of the jury. *Bronstein v. American Ice Co.*, 119 Md. 132, 86 A. 131 (1912); *Gover v. Turner*, 28 Md. 600 (1868); *Browne v. Browne*, 22 Md. 103 (1864). A verdict which is returned informally may be molded into proper shape by the trial court by referring to the pleadings and issues. *Davis v. Board of Education*, 168 Md. 74, 78-79, 176 A. 878, 880 (1935); *Browne v. Browne, supra. See also Holloway v. Wright*, 21 Md. App. 615, 620-21, 320 A. 2d 572, 575 (1974).

Since the only amount in controversy was $4,000, when the court inserted that amount in the verdicts it was only molding the judgment into proper form and, by reference to the pleadings and issues, supplied the only amount of damages that the jury obviously intended to award. *See Diamond State Tel. Co. v. Blake*, 105 Md. 570, 575, 66 A. 631, 633-34 (1907).

Additionally, the jury, by answer to the issues submitted to it, in effect rendered a "special verdict" in that having

made findings of fact, the law arising on such facts was referred for the decision of the court. *See Gover v. Turner,* 28 Md. at 604. *See also Ebert v. Millers Fire Ins. Co.,* 220 Md. 602, 155 A. 2d 484 (1959). Upon a finding that the contract had not been "voided," it was proper for the court to apply as the amount of the verdicts the net amount due as "liquidated damages."

The power to permit amendment by the withdrawal of a pleading has long been recognized. *See Greenbelt Homes v. Prince George's County,* 248 Md. 350, 353, 237 A. 2d 18, 20 (1968), citing *Mitchell v. Smith,* 4 Md. 403 (1853); and *Somervell v. King,* 1 Harr. & J. 206 (1801). When the Graftons moved "to amend by striking Count III," they invoked Maryland Rule 320 b, ostensibly on the ground that there was then a "misjoinder" in pursuing Deshner alone under that count. *See Thompson v. Sun Cab Co.,* 170 Md. 299, 303, 184 A. 576, 577 (1936); *Pendergast v. Reed,* 29 Md. 398, 402-03 (1868). That motion, made "before the jury retire[d] to make up its verdict," was timely filed in accord with Maryland Rule 320 c 2. When the trial court, holding the verdict *sub curia,* then permitted the Graftons "by amendment" to strike *both* Counts II and III, the motion to abandon Count II patently came too late.[7] Assuming the trial court then properly granted the motion — to strike Count III (as to Deshner alone) — which it concluded that it had earlier erroneously denied, and even though the abandonment of those two counts was then manifestly undertaken to permit, "before final judgment," the election mandated under *Hospelhorn v. Poe, supra,* Count II, subjecting the Traylors and Deshner to both a joint and several liability, under the substantive law of Pennsylvania, was still viable. The abandonment by the plaintiffs of their claim against Deshner under Count III did not operate as an abandonment of his potential liability "jointly or severally" under Count II and it was error for the trial court to "dismiss" that count.

When two or more promisors agree to pay a sum of money

---

7. Although the court directed the clerk to note a "dismissal" of Counts II and III, it is clear that it thereby granted the Graftons' motion to "strike by amendment" those counts, within the purview of Maryland Rule 320.

under a contract the amount promised is the promise of all and the promisee is entitled to a joint judgment against them, or judgments against them severally. In satisfying such judgments execution may be levied upon the goods of any one of them. *See* 4 A. Corbin, Contracts, §§ 924, 925, 928, 929 (1951). Even though the judgment may be joint, the payment of the entire judgment might be satisfied from any one of them. *See In re Hoge's Estate,* 188 Pa. 527, 41 A. 621 (1898). Our holdings are in accord. *See Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 65, 141 A. 434, 440 (1928). *See also* 46 Am.Jur.2d *Judgments* § 903 (1969); 30 Am.Jur.2d *Executions* § 101 (1967); and 17A C.J.S. *Contracts* § 353 (1963).

Although both the Traylors and Deshner were, under the substantive law of Pennsylvania, subject to a joint or several liability, the elective procedure for fixing such liability is set forth in *Wilson v. Kelso,* 115 Md. 162, 169, 80 A. 895, 898 (1911), quoted with approval in *Sharp v. State ex rel. Brown,* 135 Md. 551, 558, 109 A. 454, 457 (1920), as:

> "Where the obligation is joint and several, an ancient and familiar rule of law forbids it to be treated as several as to some of the obligors, and joint as to the rest. The obligee has the right of choice between the two methods of proceeding; but must resort to one or the other exclusively, and can not combine both. He must proceed either severally against each, or jointly against all. When the contract is several as well as joint, the plaintiffs [are] at liberty to proceed against the parties jointly, or each separately though their interest be joint. 1 *Chitty Pl.* 143; *Merrick v. Bank of Metropolis,* 8 Gill, 74; *Poe Pleading,* 2 Ed. section 382."

Although a plaintiff may dismiss as to all but one defendant in an action under a contract brought against two or more defendants whose obligation is joint and several, such abandonment must be timely made. *See Sharp v. State ex rel. Brown, supra* (where a judgment of non pros was entered "during the progress of the trial" as to all

defendants save one who were jointly and severally liable under a bond).

Where, as here, the Graftons, by amendment, abandoned their claim against Deshner "severally" (in Count III), their failure then to seasonably abandon their right against Deshner under Count II resulted in only a joint liability of both Mr. and Mrs. Traylor and Deshner under that count.

In the view we take of the case, it was error for the court, upon the responses by the jury, to direct the entry of a judgment against both of the Traylors "severally" (under Count I), rather than have directed the entry of a judgment in favor of the appellees, under Count II, against both of the Traylors and Deshner jointly.

Although at first blush it may seem that the Traylors' right to exoneration by their "undisclosed principal" (*Hospelhorn v. Poe, supra*) and their rights to future subrogation from Deshner as a joint obligor (*Shriver v. Carlin & Fulton Co., supra; In re Hoge's Estate, supra*) is protected by the third-party judgment entered in their favor against Deshner, and the judgment entered against them alone is nonprejudicial, this may not necessarily be so. The Traylors, as joint obligors with Deshner, might be able to avail themselves — although we do not here so decide — of the provisions of Pa. Stat. Ann. tit. 12, § 808 (1953), which entitles a joint obligor who may be entitled to subrogation or contribution to require the Graftons to levy upon or make sale of the real property of Deshner, in proportion to or in the succession in which, the properties of the several joint obligors might be liable to contribute toward the discharge of the common encumbrance. *See Roddy's Appeal*, 72 Pa. 98 (1872); *Wilner v. Croyle*, 214 Pa. Super. 91, 252 A. 2d 387 (1969).

### Substantial Performance

The Traylors assert that the trial court was in error in instructing the jury as a matter of law that "even though they might find that certain items [fixtures] had been removed, considering the purchase price, the 115 acres of land and the condition of the improvements, the plaintiffs were prepared to 'substantially' live up to their obligations

under the contract" — to which they excepted; and erroneously failed to grant their proferred instruction that the removal of certain fixtures and equipment from the property constituted a breach by the vendors.[8]

If one of the parties to a contract is guilty of a material breach the other may rescind. *McClelland v. New Amsterdam Cas. Co.*, 322 Pa. 429, 185 A. 198 (1936); *Rugg v. Moore*, 110 Pa. 236, 1 A. 320 (1885). *See also Plitt v. McMillan*, 244 Md. 450, 223 A. 2d 772 (1966); but proof of substantial performance under a contract permits the recovery of damages. *Exton Drive-In, Inc. v. Home Indem. Co.*, 436 Pa. 480, 261 A. 2d 319 (1969); *Sgarlat v. Griffith*, 349 Pa. 42, 36 A. 2d 330 (1944); *Formigli Corp. v. Fox*, 348 F. Supp. 629 (E.D.Pa. 1972). *See also Hammaker v. Schleigh, supra.*

Purchasers who have been offered substantially what they have agreed to purchase have been held not entitled to recover a deposit declared forfeited by the sellers as liquidated damages upon the buyers' refusal to purchase land. *Macon v. Zeiler, supra. In accord, Riling v. Idell*, 291 Pa. 472, 140 A. 270 (1928).

Before partial failure of performance grants the right of rescission, the act failed to be performed must go to the root of the contract or the failure to perform must be in respect to matters which would render the performance of the rest of the contract a thing different in substance from that which was contracted for. When a covenant goes only to a part of the consideration of a contract, is incidental and subordinate to its main purpose and its breach may be compensated in damages, such a breach does not warrant a rescission of the contract and compensation in damages for slight breaches is substituted for the remedy afforded by rescission of the whole contract. *See Senick v. Lucas*, 234 Md. 373, 199 A. 2d 375 (1964), quoting with approval from *Speed v. Bailey*, 153 Md. 655, 139 A. 534 (1927). The law of Pennsylvania is in accord. *See Sgarlat v. Griffith, supra*; *Pallman v. Smith*, 135 Pa. 188, 19 A. 891 (1890).

---

8. The trial court prior thereto had instructed the jury on the issue submitted as to whether or not the contract had been "voided." *See* n. 5, *supra.*

Upon our review of the testimony concerning the removal and replacement of certain fixtures, and the fact that Deshner advised the Traylors, when the missing fixtures were discussed, that he would "take care of everything at the settlement," we find that any failure of performance concerning the fixtures was inconsequential and subject to adjustment and compensation at settlement. We conclude that the trial court correctly instructed the jury in this regard.

## Mortgage Financing As Condition Precedent

Lastly, the appellants contend that the trial court erroneously failed to grant their proffered instruction that if the jury found that the Traylors "were unable to obtain a 20-year, $25,000 mortgage at an interest rate of six percent," and further found that its obtention "was an essential condition" of the contract, that the verdict must be for the Traylors.

When a contractual duty is subject to a condition precedent there is no duty of performance until the condition is satisfied or is excused. *Hollander v. Friedman*, 360 Pa. 20, 59 A. 2d 892 (1948); *Chittenholm v. Giffin*, 357 Pa. 616, 55 A. 2d 324 (1947). *In accord*, *Goldberg v. Anastasi*, 272 Md. 61, 321 A. 2d 155 (1974); *Griffith v. Scheungrab*, 219 Md. 27, 146 A. 2d 864 (1958).

In *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A. 2d 347 (1973), it was recognized that the requirement of obtaining mortgage financing as a condition in a contract for the sale of land must be given effect unless the condition has been altered by the parties or waived by the one for whose benefit the condition was made. *In accord*, are our holdings in *Barnes v. Euster*, 240 Md. 603, 214 A. 2d 807 (1965); *Griffith v. Scheungrab, supra. See also Kahn v. Schleisner*, 165 Md. 106, 166 A. 435 (1933).

Although the contract of purchase may have here been subject to the obtention of the specified mortgage financing by the Traylors, from the testimony by Eppley that on several occasions within the period prior to the first scheduled settlement Mrs. Traylor had informed him that

the Traylors could obtain the financing and there was "no problem about financing," there was evidence from which a waiver of the condition precedent, for the benefit of the Traylors, could be found. Even though there was evidence that Mrs. Traylor inquired at the Delta Bank about financing, there was no evidence that any application for such a mortgage was made there — or attempted at any other lending institution. The testimony by the Traylors that Eilers would "finance the whole deal" by arrangements made through Deshner and had agreed to take a mortgage from them was no evidentiary substitute for a showing by them that they had taken bona fide, reasonable and prompt action to obtain the financing specified and had failed in their efforts. *See Robert F. Felte, Inc. v. White, supra; Hollander v. Friedman, supra.* Finding, upon this state of the record, no evidence that the Traylors even attempted to obtain the financing provided, we hold that the condition, created for their benefit, was waived by them and the trial court did not err in refusing the requested instruction.

Since we have concluded that the trial court was in error in directing the entry of a verdict and judgment against the Traylors alone under Count I, we shall reverse that judgment and in accordance with the provisions of Maryland Rule 875 enter a judgment "as ought to have been entered in the lower court," against both of the Traylors and Deshner jointly under Count II. See *Webster v. Larmore,* 268 Md. 153, 169, 299 A. 2d 814, 822 (1973).

> *Judgment in favor of the appellees against the appellants under Count I reversed and vacated; judgment entered under Count II in favor of the appellees against the appellants and Deshner jointly in the amount of $4000.00, with interest from July 13, 1973; one-half the costs to be paid by the appellants and one-half to be paid by appellees.*